7    491
16   297
16   471
16   475
17   479
17   480
7    491
c20  624

[No. 978.  Decided December 28, 1893.]

ERNEST A: GULEY, *Respondent*, v. THE NORTHWESTERN
COAL AND TRANSPORTATION COMPANY, *Appellant*.

ACTION FOR PERSONAL INJURIES — WEIGHT OF TESTIMONY — ERRO-
NEOUS INSTRUCTIONS.

Where there is conflicting testimony, but the clear weight of the
evidence is with either side, the court is justified in taking the de-
cision of the case from the jury. (DUNBAR, C. J., and SCOTT, J.,
dissent.)

In an action for damages for injuries to a child of tender years
alleged to have been placed in charge of a coal car on a down
grade, where the only testimony in regard to the difficulty of oper-
ating the car brake was that of the injured child, who had no ex-
perience with brakes generally, an instruction on the question of
defective brakes is not proper to the case.

*Appeal from Superior Court, Thurston County.*

*Phil. Skillman,* for appellant.

*C. S. Salisbury,* and *Thompson, Edsen & Humphries,*
for respondent.

The opinion of the court was delivered by

STILES, J.—The complaint in this case alleged that, on
the 8th day of March, 1888, plaintiff, then a boy of thir-
teen years, was in the employ of defendant, at its coal
mines in Thurston county, as a screener, and that, while so
employed, he was ordered by defendant's superintendent
to leave his work and, with the assistance of another boy
of about plaintiff's age, to take a car loaded with coal
down a steep grade to the scale at said mines.   Paragraph
6 then proceeds as follows:

"That the plaintiff was inexperienced in handling the
brakes of cars, and that the brake on said coal car was de-
fective, and the same was known to defendant, and despite
the utmost efforts and exertions of plaintiff and his com-

panion, the car got beyond their control and rushed down a steep grade with such great speed that plaintiff was thrown from said car to the ground, falling in such a manner that his right hand lay across the rail of the car track and was permanently injured, to wit, by the car running over his right hand and crushing and mangling it in such a manner that amputation was necessary, and the fingers of said right hand were, in consequence, amputated, and the hand crippled for life."

The answer admitted the plaintiff's employment as a coal screener, denied having ordered plaintiff to get upon the car, or that the brake was defective, and set up facts showing that he had, in spite of the defendant's commands, and without its knowledge, left his work and gone upon the car, when he was injured by his own carelessness. The reply was a general denial of the facts showing contribution.

The plaintiff alone testified to the facts, in substance, as follows:

"Ismay, the superintendent, called me and his son, a boy of my own age, from the place where we were working, to run a few cars down to the scales to weigh them. He gave me a stick to put in the brake of the car so I could manage it. He said: 'Take this stick and drop that car down; the brake is not good.' I knew nothing about the brake. Had run other cars down the same way, but not with a stick. Put the stick through the spokes of the brake wheel and used it as a lever. The other boy helped by taking hold of the other side of the wheel. We let the car down about twenty feet to the scales. I put my whole weight against the stick and it broke, and I fell upon the ground in front of the car and was stunned, as I struck on my head. Knew nothing more until I got out from under the car and found my hand crushed. Ismay was there within ten or fifteen feet of me, and he took me on his back and carried me home. When my father came in he was blaming me for it, and Ismay said: 'Don't blame the boy; I was to blame for it. I told him to brake the car down, and gave him the stick to brake it down with.'

Cross examined: The car was not running fast. The front truck only passed over me; then it stopped. It was necessary to have the brakes set to keep cars from running down. We loosened the brake, then the car started, ran about its own length and stopped. Had been discharged and reëmployed by the company twice before the accident, and again afterward. Ismay said the first two times that it was because I was lazy; the last time was because I was not ablebodied. Was not in the habit of leaving my work and getting on the cars for a ride. Didn't know that anyone was behind the car pinching it ahead with a crowbar. There might have been another car behind the one I was on. If the stick had not been rotten I would not have fallen. Re-direct: The brake was hard to throw, and wouldn't hold the car without the use of unusual force. Ismay never told me to keep away from the cars. Did not know of any rule forbidding boys to go there.''

Plaintiff's foster mother and one Striker corroborated him as to what Ismay said in taking the blame for the accident upon himself. His father was dead at the time of the trial. Striker further stated that the railroad grade between the bunker and the scale was not heavy— enough to run a car down without forcing it any, unless the track was dirty, as it generally was at the bunkers. Didn't think a car along there would run a mile an hour.

This testimony by no means met the allegations of the complaint, that the injury occurred by plaintiff's being thrown off the car while it was running away down a steep grade, and by reason thereof, and because the brake was defective, and would have justified the court in striking it all out. But having been received without objection, and no motion to strike or suggestion of surprise having been made, a non-suit was properly refused.

On behalf of the defendant, the superintendent testified that plaintiff's discharges, both before and after the accident, were because he persisted in leaving his work and getting on the coal cars as they were being handled along

the track.    He also denied having told plaintiff to get upon the car, or having given him a stick, or to brake the car, or that the brake was defective, to his knowledge.

The car in question had been loaded and run down within a few feet of the scales where it was stopped by dirt on the track.    Witness was back in the rear of a second car which had been loaded, and had men pinching the second car ahead so as to strike the first car and bump it onto the scales.    Just at the moment of the collision he turned and saw plaintiff and his own boy on the front end of the first car, and saw plaintiff fall.    He ran around and found the front truck not yet on the scales, and plaintiff lying under this truck, the first wheel of which had passed over his hand; drew the boy out from under the car and carried him home.    Witness denied having said he was to blame in having directed the boy to get on the car and giving him a stick, or that Striker was present when he carried him in; had instructed the boys many times not to get on the cars, and told other employés to see that they did not do so; punished his own boy for getting on this car, and on other similar occasions.

Ismay, jr., testified:

"We were screening coal, and my father, with two or three other men, went down to load some cars that the train had just brought in; so we hurried up with our screening and went down to see if we could catch a ride from the bunkers down below.    When we got down to the bottom of the stairs we saw a car standing.    We thought it was on the scales and we started to get on to it, and we saw a stick lying off by a stump there, and both ran for it at the same time, but he got the stick first.    We climbed upon the car to take the brake off, and he put the stick into the brake wheel and swung around, and just as he swung around the car behind bumped, and as the car bumped the stick broke and he fell on his back on the track.    The car did not move more than six feet.    My father had frequently told us to stay off the cars, and he whipped me for getting

on at this time as well as others.    He did not tell us to get on the car.''

Other adult witnesses, several in number, corroborated the superintendent and contradicted the plaintiff, six of them as to the frequent and positive instructions given the boys to keep off the cars.

The jury, without any evidence to base it on, found specially that the brake was defective and that defendant knew it.    They also found that it was the breaking of the stick that caused plaintiff to fall; that another car collided with the car he was on; that there was no rule of which plaintiff had knowledge against his going on the cars, and that he went upon the car under the order of the superintendent.    They found generally for the plaintiff.

While we shall ordinarily be very slow to interfere with the verdict of a jury, where the testimony is conflicting, we do not think justice would be done were this one allowed to stand.    There may be, and sometimes are, cases where the testimony of a single witness, even a child, will outweigh that of many opposed, where there are circumstances of suspicion connected with them.    But there was not, in this case, a single attempt to break down or impeach a witness for the defendant; and much of what they did say that was material was not contradicted by the plaintiff, though he was called in rebuttal.    Credible witnesses cannot be set aside in this way, and a verdict supported on the uncorroborated testimony of a single witness, and he the party most interested.    Where the clear weight of the evidence is with either side, there is no substantial conflict, and the court should take the decision of the case from the jury.    Thompson on Trials, § 2250; *Wilds v. Railroad Co.*, 24 N. Y. 430; *Corning v. Troy Iron and Nail Factory*, 44 N. Y. 577.

No part of the instructions given on the question of the defective brake was proper in the case, because there was

no competent testimony on that subject.    One of the principal grounds urged to support the recovery was, that the plaintiff was a child of tender years, without knowledge or experience to enable him to care for himself; yet his statement that the brake was hard to operate without the exercise of unusual force was all there was in the case on that point.    He had no experience with brakes generally, and could not know whether this one was hard to operate in comparison with others or not; and, moreover, his only knowledge of this one was gained in the single moment of time in which he was pressing against it before he 'fell.    It was more than he could turn with a rotten stick, and that was all there was of it.    The only question in the case was, whether Ismay directed plaintiff to get upon the car.    If he did this, plaintiff might be entitled to recover; otherwise not.    The instruction as to the burden of showing contributory negligence was correctly given.    *Spurrier v. Front Street, etc., Ry. Co.*, 3 Wash. 659 (29 Pac. Rep. 346).

Appellant is entitled to a new trial, and the judgment is reversed for that purpose, respondent having leave to amend his complaint so as to state the facts.

HOYT and ANDERS, JJ., concur.

DUNBAR, C. J. (*dissenting*).— I dissent.    The judgment in this case seems to be reversed solely on the ground that the weight of testimony is in favor of the defendant.    This is a case of a plain conflict of testimony.    If the statement of plaintiff is true he ought to recover.    According to his statement, Ismay, the superintendent, knew that the brake was defective, and gave him the defective stick to use, the breaking of which was the cause of the accident, and instructed him to use it as he did use it.    He called the plaintiff from other work on which he was engaged and instructed him how to run the car down.    The instructions

were literally followed. The means supplied by the super-
intendent were used, and in literally following the instruc-
tions of his superintendent, and by reason of the defective
means employed, he was injured.

It is true this statement was flatly contradicted by the
superintendent and his son, a boy about the same age as
the plaintiff, and the testimony of several other witnesses
tended to contradict it. But it is too late in the history
of jurisprudence to lay down the rule that the weight of
testimony is to be ascertained by counting the number of
witnesses who testify *pro* and *con* on a proposition, and to
go still further and hold it error for a. jury to believe the
testimony of one witness which was contradicted by the
testimony of two or more witnesses; and yet this court, to
reverse this case, must either yield its allegiance to this
doctrine or the other equally fallacious one, that it is the
duty of this court to constitute itself an appellate jury and
weigh the testimony and render a verdict upon the facts
in the case.

My idea is, that the law, if it is to be administered with
any efficacy at all, must be administered as a system.
That has been the idea of the law makers, and they have
promulgated a system conferring certain jurisdictions and
powers upon courts, and conferring certain other jurisdic-
tions, powers and provinces just as firmly upon juries. It
is not intended that these powers should trench upon each
other, and there is no occasion for them to do so. It is
the duty of the court to announce and enforce the law
governing the admission of testimony, and to see, under
proper objection, that only legal testimony is admitted.
It may even go farther and decide that as a matter of law
certain testimony, if conceded to be true, would not con-
stitute a defense, or would not sustain a judgment, but it
has no more right to weigh testimony, or to pass upon the
credibility of witnesses, or to say what testimony is prob-

able or improbable, or to say what circumstances are suspicious, than the jury has to usurp the functions of the court in construing the law, and to refuse to render a verdict for a plaintiff because in their judgment the complaint does not state facts sufficient to constitute a cause of action; for the law makes it the special and exclusive province of the jury to weigh the testimony and pass upon the credibility of the witnesses, for reasons which have been so often and so uniformly announced in the courts that it would be like citing elementary law to cite them here. In my judgment the law cited by the majority from Thompson on Trials does not tend in any degree to sustain the opinion.

It is not contended by the majority that there was not sufficient legal testimony offered by the plaintiff to sustain the verdict, if it had not been disputed; but the bald contention is, that in the opinion of this court the jury was not justified in believing the testimony of the plaintiff, because it was contradicted by a large number of credible witnesses ''who were unimpeached,'' ''and credible witnesses,'' say the court, ''cannot be set aside in this way and a verdict sustained on the uncorroborated testimony of a single witness, and he the party most interested.''

I am not aware of any law compelling the jury to believe the testimony of a witness because he has not been impeached, and I have always been of the opinion that the interest of the witness was a matter especially to be taken into consideration by the jury as affecting his credibility; but that there is no legal barrier to a jury believing him notwithstanding his interest.    If I am correct in this proposition, the presumption, then, is that the jury *did* take the witness' interest into consideration, and that they exercised their legal right of believing him notwithstanding his interest.    It is barely possible that the jury also considered the interest of the witness Ismay, who was a ser-

vant of the company, and who was alleged to have been the cause of the damage suffered; and if I should deem it worth while to enter into a discussion of the weight of the testimony, I might add that the record shows that the statement of the boy was corroborated, so far as the admission of the superintendent is concerned, that the accident was his fault, by the mother of the boy, and by the witness Striker, who testified that he was at the boy's home when Ismay brought the boy home immediately after the accident, and that Ismay said to the boy's father:

"It wasn't the boy's fault, Fred; it is my fault. I ordered the boy to take the car down and gave him a stick to take it down with, but the stick broke and made him fall forward in front of the car."

Striker at least was a disinterested witness and was "unimpeached." The jury had a legal right to believe his testimony, and if it was true that Ismay made this admission at the time the accident occurred, it was very strongly corroborative of the testimony of the plaintiff at the trial on the main issue in the case.

But the very fact that the different members of this court, who were not present at the trial and who did not hear the witnesses testify, differ as to where the weight of testimony is, shows the wisdom of the law in submitting all questions of the credibility of witnesses to the jury to whom the evidence is personally addressed. And this has been the uniform holding of this court. In *Noyes v. Pugin*, 2 Wash. 653 (27 Pac. Rep. 548), this court said:

"The first contention of appellant is, that the evidence fails to show any employment of respondent by him, or that he ever requested the latter to perform the labor for which he now seeks compensation, and that the court below erred in not setting aside the verdict for insufficiency of the evidence. Upon that point both parties testified fully; and, there being a direct conflict between the testimony of plaintiff and defendant, it was for the jury to determine,

under all the facts and circumstances before them, upon which side lay the preponderance of the evidence.''

In *Lybarger v. State*, 2 Wash. 553 (27 Pac. Rep. 449), we held that where there was sufficient evidence to sustain the verdict of the jury the supreme court would not pass upon the weight of testimony. In *Graves v. Griffith Realty, etc., Co.*, 3 Wash. 742 (29 Pac. Rep. 344), the court said:

''The main contention here is, that the evidence did not support the findings. An appellate court in a law case will not usurp the functions of the jury, or of a judge acting in the capacity of a jury, and reverse the judgment because the weight of testimony seems to be on the other side, or because, in a case of conflict of testimony, the jury believed the testimony of witnesses that it does not believe. This doctrine is so elementary and so universally announced by the courts that it would be idle to enlarge upon it or discuss it further. It is sufficient to say that the jury is the judge of the facts. If the testimony on which the judgment is based is competent, and is legally introduced, and if conceded to be true would sustain the judgment, the appellate court will not inquire further as to its sufficiency.''

In *Puget Sound, etc., R. R. Co. v. Ingersoll*, 4 Wash. 675 (30 Pac. Rep. 1097), we decided that ''the verdict of a jury will not be disturbed where the testimony is conflicting, if there is sufficient evidence to sustain the verdict;'' and in *Brasen v. Seattle, Lake Shore, etc., Ry. Co.*, 4 Wash. 754 (31 Pac. Rep. 34), that ''where there is sufficient legal testimony to support the verdict of the jury awarding damages, the verdict will not be disturbed in the supreme court.'' In *Dillon v. Folsom*, 5 Wash. 439 (32 Pac. Rep. 216), the court said:

''An examination of the record satisfies us that there was a substantial conflict in the testimony upon the main issue, and this being the case the verdict must stand. If this court should set aside verdicts upon the ground that in its opinion a preponderance of the testimony was in favor

of the other side of the issue presented to the jury, there would be little use in jury trials. All this court will do in any case is to investigate the record so far as is necessary to see whether or not there was substantial testimony to support all the issues necessary to be found by the jury, and if such is contained in the record, the verdict will not be set aside for the reason that in its opinion there was a greater amount of testimony on the other side."

In *Booth v. Columbia, etc., R. R. Co.*, 6 Wash. 531 (33 Pac. Rep. 1075), the court, after announcing that a certain proposition was denied, proceeds to say:

"Whether or not it was successfully denied, is a question for the jury to pass upon, and they have passed upon that question in favor of the contention of the respondents, and this court will therefore not presume to set aside their verdict, even though in its judgment the weight of testimony is in favor of the appellant."

And in *Burden v. Cropp, ante*, p. 198, the language of the court is:

"The only question presented by the record in this case is that of the sufficiency of the evidence to sustain the verdict of the jury, and as we think that the testimony of the plaintiff's witnesses, if believed by the jury, was sufficient to establish the cause of action set out in the complaint, it follows by well established principles that the verdict must be sustained, even although the testimony offered in opposition thereto is more satisfactory to our minds. It is not enough to authorize us to disturb the verdict of the jury that we should be of the opinion that the evidence upon the other side was entitled to a greater weight than that upon which the verdict seems to have been founded. It is enough if there was any evidence which, if uncontradicted, would be sufficient to establish all the facts necessary to sustain the complaint of the successful party."

The decisions cited above have been concurred in by every member of this court, and they have been so uniform, so clear and so pointed that the bar of the state had

a right to rely upon them in the preparation of their briefs in this court; and the brief of the respondent in this case convinces me that they did rely on the law in that respect being settled, and therefore did not discuss the question upon which the case is reversed, but devoted their brief to the discussion of law points involved, upon which the majority seems to sustain them.

I know of no good reason why this court should leave the well beaten path which it has heretofore so uniformly trodden, in company with every other appellate court, and start out on another road which, in my judgment, it cannot occupy without a plain usurpation of the province of another tribunal; without in effect denying a constitutional right to the citizen, and without bringing about the unfortunate disturbances which always follow the unsettling of a well established principle. The judgment should be affirmed.

SCOTT, J., concurs.