[No. 2451.   Decided February 13, 1897.]

W. P. BROWN *et ux.*, *Respondents*, v. SEATTLE CITY RAILWAY COMPANY AND W. A. UNDERWOOD, *its Receiver*, *Appellants*.

STREET RAILWAYS — INJURY TO PASSENGER ALIGHTING FROM CAR — DUTY OF CARRIER — CONTRIBUTORY NEGLIGENCE — PLEADING — INSTRUCTIONS.

When plaintiff, in an action for damages for injuries incurred through the negligence of defendant, negatives contributory negligence in his complaint and in his reply denies the affirmative defense of contributory negligence set up by defendants, instead of demurring thereto, he cannot on the trial object to the introduction of evidence of contributory negligence on the ground that the answer does not state facts sufficient to constitute such defense.

Whether or not a passenger has been negligent in alighting from a street car is a question of fact for the jury to determine, and, where there is a substantial conflict in the testimony, their verdict should not be disturbed.

30—16 WASH.

A railway company is liable for any damage suffered by a passenger in alighting from its cars, which is proximately caused by the failure of such carrier to use the highest degree of prudence, care and caution to avoid injury to the passengers, if negligence on the part of the passenger has not contributed to the injury.

Where instructions, when construed together, fairly state the law as applied to the facts of the case, a misleading statement in one instruction cannot be regarded as prejudicial.

Appeal from Superior Court, King County.—Hon. RICHARD OSBORN, Judge.    Affirmed.

*Andrew F. Burleigh,* and *Thomas A. Gamble,* for appellants.

*J. T. Ronald,* for respondents.

The opinion of the court was delivered by

REAVIS, J.—The appellant company is the owner of a cable railway in Seattle. The eastern terminus of the road is situated on the shore of Lake Washington at the foot of Yesler way, and its western terminus is also on Yesler way at the junction of that street with Occidental avenue. At the western terminus of the road is a turn-table on which the trains of the railway are run and turned around preparatory to starting on their trip eastward to Lake Washington. On the 22d of September, 1893, between five and six o'clock in the afternoon, a train of the appellant company, consisting of a dummy and a trailer car, arrived at the turn-table at the western terminus of the road and was turned around and coupled together in the usual manner. The train had not yet started on its trip to the lake, when the respondent, Mrs. Brown, entered the car, where there were three or four passengers already seated. She took her seat on the south side of the car near the front door. Just as she was seated, her husband, one of the respondents, followed her and called

out to her, asking if she had "got the medicine for the old lady." Mrs. Brown replied that she had forgotten it, and, getting up, went hastily out of the car to the front platform and stepped off the car, and, while stepping off, was thrown down and sustained severe injuries.

Before proceeding to discuss the errors assigned by appellants, we desire to notice the objection made to the answer by the respondents. The complaint of respondents as plaintiffs in the superior court, after alleging negligence of the appellant (defendant below), continues and negatives contributory negligence on the part of respondents, by stating in the fifth paragraph of the complaint as follows:

"Whereby the said plaintiff, Celestia M. Brown, without negligence or fault on her part, but wholly owing to said reckless, careless and sudden jerking and starting of said car by defendant's servants and employees as aforesaid, was violently and with great force thrown from the platform step of said car to the ground."

The defendant company in its answer, after denying the material allegations of the complaint, endeavored to set up contributory negligence on the part of the plaintiff injured, in the following language:

"For a further separate, affirmative defense 'to the cause of action in the complaint set out defendants aver:

"1. That whatever injuries were received by plaintiffs, Celestia M. Brown or by her husband, W. P. Brown, or either or both of them, in the manner and form as set out in the complaint, or otherwise howsoever, were not so received or sustained through any fault or negligence of these defendants, or either of them, their officers, agents or servants, but such injuries were caused by the carelessness, fault and want of care on the part of said plaintiffs and each of them,

and particularly on the part of said plaintiff, Celestia M. Brown."

Plaintiffs did not move against the answer to have it made more specific, nor demur thereto because it was insufficient, but filed a reply denying all the allegations of contributory negligence set up in the answer, but on trial objected to any evidence of contributory negligence on the ground that the affirmative defense in the answer did not state facts sufficient to constitute a defense. The court overruled the objection to this testimony and it was admitted. We think the action of the lower court was correct in its ruling on this objection. However imperfectly the affirmative defense stated the plea of contributory negligence against plaintiffs, there was a sufficient statement, when denied by the plaintiffs in their reply, to make the plea good, especially in view of the fact that the plaintiffs had chosen in their complaint to affirmatively negative contributory negligence on the part of the plaintiff injured.

The errors complained of by appellants here may be reduced to two: first, that the motion of appellant for a non-suit upon the testimony should have been granted by the superior court on the ground that the evidence did not sustain the verdict, and second that the superior court should have granted a new trial because an inspection of the whole evidence will conclusively show that the verdict of the jury was against the weight of evidence. The other point argued by appellants is that errors were committed in the instructions given to the jury. The appellants maintain that it was not shown satisfactorily that the respondent notified the conductor of her intention to alight from the car before attempting to do so. Upon this point the testimony of Mrs. Brown is as follows :

"I got on the car right there at the turntable where they stop, and I went in and just got seated, and Mr. Brown came to me and he says : 'Have you got that medicine for the old lady?' And I said, 'No; I will get up — I will get up and go out before the car starts.' And with that — the conductor was standing at the end — I threw my hand up at him like that (illustrating), and I raised up quickly and stepped out of the door; I went to the platform and stepped to the last step, and was about to step off when the car started up with a jerk, and I was holding onto the rail with this hand (illustrating); when the car started up that way it threw me clear around — I went clear around like that (illustrating), and my dress caught on something. Anyhow it tore my hold off of the bar, and I don't know how far I went or anything like that, when the wheel went over my left foot, just above the ankle."

And again Mrs. Brown said on cross-examination:

" *Question :* You say you looked towards the conductor ? *Answer :* I did.

" Q. Or did you simply throw your hand up? A. I threw my hand at him like that (showing).

" Q. What did you say the conductor was doing ? A. He was leaning back and he appeared to be looking through the car.

" Q. He was looking through the car at that moment ? A. Yes, sir.

" Q. When you threw your hand up ? A. When I threw my hand at him he first looked at me and he took his hat off, and then he reached for the bell. I didn't notice him any other way, but I just threw my hand out and I looked at him. Then I started off."

And again :

" *Question :* Was the car in motion when you got up ? *Answer :* No, sir; the car was standing still.

" Q. When did the car start ? A. The car started just as I was about to step off.

" Q. Step off where — from the platform or the step ? A. Off of the step.

"Q. How did the car start? A. It started sudden like that."

There were other witnesses who corroborated Mrs. Brown in her statement that the car was standing still when she arose to go out, and that simultaneously with her act of stepping on the ground the car started, throwing her backwards and under the same. Mrs. Brown's statement that she put up her hand to the conductor when she arose in the car before starting to get off is contradicted by the evidence of several witnesses, who state that they did not see her make the signal to the conductor, and by the conductor himself, but we cannot determine from our inspection of the whole record that Mrs. Brown is necessarily a discredited witness. It is true, her interests were involved in the result of the suit, and that was a matter for the jury to take into consideration. There was evidence to support the verdict, if the witness was credited by the jury. We do not think it is the function of the court to weigh the credibility of the witnesses, and, where there is substantial conflict in the testimony, the case is for the determination of the jury.

The second point made by appellants upon the insufficiency of the evidence to support the verdict is that the plaintiff did not show that the car was not in motion when Mrs. Brown attempted to alight. There is certainly substantial conflict in the evidence that went to the jury on this point, and we cannot announce as a legal proposition that a passenger upon a street railway car may not get off the car when in motion. It would depend entirely, in our judgment, upon the circumstances, that is, the rate of speed, place at which the passenger might attempt to alight, and other things, which would make each case depend upon the particular facts and necessarily, ordinarily,

be a question of fact for the jury to determine whether the act of the passenger was negligent. We do not think the views here expressed necessarily conflict with the decision of this court in *Guley v. Northwestern Coal, etc., Co.*, 7 Wash. 491 (35 Pac. 372), as the court there used the expression that the *clear* weight of all the evidence must be on one side to justify the court in taking the decision from the jury. But the court does not favor any extension of the rule announced in the case cited. Some of the cases cited by appellants upon the duty of the passenger when boarding or alighting from a street car may be here noticed.

In *Nichols v. Middlesex R. R. Co.*, 106 Mass. 463, the defendants, in view of the evidence, requested the court to instruct the jury as follows:

" That if the plaintiff took upon herself the charge of the car, and, without notice to any one, the conductor then being on the car, she rang the bell, and, without the knowledge of driver or conductor, proceeded to get off, she could not recover."

" That it was the duty of the plaintiff to have notified some one in charge of the car, if she desired to get off, and if she got off without such notice, or without the knowledge of those in charge of the car, she did so at her peril, and cannot recover,"

which was refused. The supreme court said:

" We are of the opinion that the substance of these instructions should have been given. If the plaintiff attempted to get off the car without any notice to the conductor or driver, and was injured by the sudden starting of the car, such injury cannot be attributed to the negligence of the defendants. The alleged negligence consisted in improperly starting the car when a passenger was getting off; but if the conductor and driver neither knew, nor were notified, nor had the means of knowing, that a passenger desired to get off, or was in the act of getting off, there was no negligence

in starting the horses at a faster gait.   Upon the evidence reported in the bill of exceptions, it would be competent for the jury to find that the plaintiff undertook to get off without any notice to the defendant's servants in charge of the car, and without their knowing, or having the means of knowing, that she was getting off; and we think the defendants had the right to a specific instruction that if they so found the plaintiff could not recover.   This is substantially the instruction requested by the defendants, and we think the jury may have been misled by the refusal to give this instruction, and that the general instructions would not correct the effect of this refusal."

In another case cited by appellants, *Eppendorf v. Brooklyn City, etc., R. R. Co.*, 69 N. Y. 195 (25 Am. Rep. 171), the court says:

" Ordinarily it is perfectly safe to get upon a street car moving slowly, and thousands of people do it every day with perfect safety.   But there may be exceptional cases, when the car is moving rapidly, or when the person is infirm or clumsy, or is incumbered with children, packages or other hindrances, or when there are other unfavorable conditions, when it would be reckless to do so, and a court might, upon undisputed evidence, hold as matter of law that there was negligence in doing so.   But in most cases it must be a question for a jury.   Here there was nothing exceptional, and no reason apparent why plaintiff might not, with prudence, have expected to enter the car with safety.   He had the right to expect that the speed of the car would continue arrested until he was safely on the car.   It was the act of the driver in letting go the brake without notice, and thus suddenly giving the car a jerk while plaintiff was getting upon it, that caused the accident.

" Upon all the evidence of this case it was for the jury to determine whether the plaintiff was chargeable with negligence, and whether such negligence contributed to the injury."

The case of *Philadelphia, etc., Ry. Co. v. Hassard*, 75 Pa. St. 367, was where a boy was injured, and the principal question discussed by the court was, what increased degree of care was incumbent on the carrier in view of plaintiff's experience and tender years, and is not in point here.

The exceptions to the instructions of the superior court may be discussed together. An instruction was given as follows at the request of respondents:

"If the jury believe, from a fair preponderance of the testimony of this case, that on or about the 22nd day of September, 1893, the plaintiff Celestia M. Brown was a passenger upon one of the street cars of the defendant operating on Yesler avenue, in the city of Seattle, and that while such car was stopped, the plaintiff Celestia M. Brown, in the exercise of due care and diligence on her part, was in the act of alighting from said car, and that the defendant, by its conductor, knowing the same, or *by the exercise of extraordinary care and diligence on the part of such conductor could have known it*, started the car while the plaintiff was so getting off and before she had a reasonable time to do so, and thereby threw the plaintiff down upon the street, and by reason thereof she was injured, then the defendant would be liable, etc."

In connection with this, the court gave the following instruction at the request of defendants, with the modification italicized:

"Gentlemen of the jury, the court instructs you that it was the duty of the plaintiff Celestia M. Brown, in this case, to have notified some one in charge of the car if she desired to get off, and if she got off without such notice, or without the knowledge of those in charge of the car, while said car was in motion, she did so at her peril, *provided you should further find, from the evidence that the conductor in charge of said car could not by the exercise of the highest degree of care and caution avoid injury to plaintiff.*"

It is claimed by appellants that the court here virtually charged the appellants as insurers and absolved the respondent Mrs. Brown from all responsibility, however negligent she might have been, but the court gave also the following instructions in the course of its charge:

"Gentlemen of the jury, the court further instructs you that the law imposes no duty upon a railway company to anticipate the committing of acts of negligence by any of its passengers, nor is it incumbent upon a railway company, its agents, servants, or employees, to be on the lookout for the commission of acts of negligence by passengers riding upon its cars. If, therefore, you find from the evidence in this case, that plaintiff Celestia M. Brown placed herself in a dangerous position, by rushing out on the front platform of the car of the defendant company, and attempted to alight from the front platform of the car while the same was in motion (at a high rate of speed), the court instructs you that she thereby assumed the risk of the position in which she placed herself voluntarily, and if you find that such an act was an act of negligence on her part, and by such an act she directly contributed to the injuries received by her, then she was guilty of contributory negligence and cannot recover from the defendants in this case."

"The court further instructs you that it was not incumbent upon the servants of the defendants, the conductor in charge of the car, to be on the look out for such action on the part of the plaintiff, if you should find that she committed such acts, nor was it negligence on the part of the conductor to ring the bell and signal the gripman to start the car, unless he actually saw the position of danger in which the plaintiff had placed herself, and not otherwise."

"If the jury believe from the evidence that the plaintiff Celestia M. Brown attempted to jump off the front platform of the car while the same was running at its ordinary rate of speed, then the plaintiff

was guilty of contributory negligence, and if you so find your verdict will be for the defendants."

We think, construing the instructions altogether, they fairly stated the law as applied to the facts of the case, and the error assigned upon the instructions is not well taken. It is said in Shearman & Redfield on Negligence, § 51:

"It is the settled rule of common law throughout the United States, and probably also in Great Britain and Ireland that common carriers of persons, and especially railway companies, are liable for any damage suffered by their passengers, which is proximately caused by the failure of such carriers to use the highest degree of prudence, and, in some cases, the utmost human skill and foresight. This precise language is constantly used in charging juries, and it is sustained by such controlling authority as to make it useless to discuss its propriety at any length."

We think the above citation is a fair statement of the law as announced by the best authorities. We do not doubt that the utmost care is required and this is due to the essentially modern regard for human life in the development of applied science.

The jury having found a verdict for the plaintiffs below, and there being substantial evidence upon which its conclusion is based, this court cannot disturb the judgment.

Affirmed.

SCOTT, C. J., and ANDERS and GORDON, JJ., concur.

DUNBAR, J. (*concurring*).—I concur in the result, but I do not wish to be understood as indorsing in any decree the doctrine announced in *Guley v. Northwestern Coal, etc., Co.*, 7 Wash. 491 (35 Pac. 372). That opinion is in conflict with the rule announced in all the states with constitutions like ours and in

indirect conflict with all the other decisions of this
court both prior and subsequent to its rendering.