[No. 3161. Decided March 3, 1899.]

JAMES T. PRONGER, *Respondent,* v. THE OLD NATIONAL BANK *et al., Appellants.*

CORPORATIONS—FRAUD—ULTRA VIRES AS DEFENSE—AFFIRMANCE OF FRAUDULENT SALE—REMEDIES—APPEAL—SUFFICIENCY OF EVIDENCE—INSTRUCTIONS—HARMLESS ERROR.

Where a national bank, through its officers, has induced a person to enter into an agreement in the nature of a partnership for the purpose of defrauding him, it cannot avoid liability on

the ground that the contract was *ultra vires*, and that the person setting up the fraudulent representations had no right to rely on them.

In an action for fraud a *prima facie* case is established when the evidence discloses that the defendant bank owned two notes which it had taken in the course of business; that the payor of the notes was insolvent, and the notes worthless; that defendant, knowing this, caused the notes to be forwarded to plaintiff without his consent and his account with the defendant bank to be charged with the face value of the notes, falsely representing that the notes were taken for a loan of plaintiff's money made by an officer of the defendant bank to the payor, who was solvent and would pay the notes on demand; and that plaintiff had suffered loss thereby to the extent of the account charged against him by defendants.

A judgment founded on the verdict of a jury will not be reversed, where there is a substantial conflict in the evidence, merely because the appellate court may be of the opinion that the weight of the evidence is contrary to the conclusion necessary to be reached in order to sustain the judgment.

One who has been induced to purchase promissory notes through fraudulent representations is not barred from maintaining an action for damages on account of the fraud, by the fact that he affirmed the contract and assumed ownership of the notes.

A charge to the jury must be read as a whole, and, if the whole charge fairly states the law of the case, as applicable to the facts, it will not work a reversal, even though disconnected portions of the charge may state the law too broadly.

Appeal from Superior Court, Spokane County.—Hon. LEANDER H. PRATHER, Judge.   Affirmed.

*Stoll & Macdonald,* and *Jay H. Adams,* for appellants.

*Blake & Post,* for respondent.

The opinion of the court was delivered by

FULLERTON, J.—This is an action brought by the respondent against appellants for damages arising from fraud alleged to have been perpetrated upon respondent by the appellants.   The acts constituting the fraud charged, as shown by the complaint, are briefly these:  The

appellant bank is a national bank doing business at Spokane, in Spokane county, and the appellants Glidden and Vincent are respectively president and cashier thereof; that about October 13, 1896, the respondent had on deposit in the appellant bank some $2,200, which he was desirous of investing in some profitable business, and the appellants, conspiring together to cheat and defraud him of his money, induced him to open a bank at the town of Cheney in that county, and invest therein $2,000, promising and agreeing to invest therein a like amount and such further sums as the exigencies of the business would from time to time demand; that appellants had no intention of making any investment in the Cheney bank, but made the agreement for the sole purpose of putting off on to the respondent certain worthless paper belonging to the appellant bank; that upon the organization of the Cheney bank the appellant bank became its correspondent and furnished the Cheney bank with monthly statements showing the condition of the account between defendants and the Cheney bank; that in one of these statements furnished on the last of March, 1897, it charged the Cheney bank with two items, one for $500 under date of March 15th, and the other of $1,000 under date of March 18th, both credited to the O. K. Gold Mining Company; that upon receiving the statement, the respondent made inquiry by telephone of the appellant bank concerning these items, and was told that the items represented charges taken from tickets furnished the bookkeeper by the cashier, and that no one present could give any further explanation as to them; that Vincent, the cashier, was East and would explain upon his return; that upon the return of Vincent he renewed his inquiry and was informed that they represented two notes, for the several amounts mentioned, executed to the appellant bank by the O. K. Gold Mining Company; that Vincent assured him that the payor was

solvent, that the notes were as good as any paper the appellant bank had and would be paid promptly on demand; that the respondent relied on the statements made to him by Vincent, accepted the notes and gave the appellant bank credit for them; that the notes were the property of the appellant bank, were worthless and the payor insolvent, all of which was known to the appellants; that the notes were forwarded to him and representations were made to him, for the sole purpose of cheating and defrauding him out of his money, in pursuance of a conspiracy entered into by the appellants; that upon learning of the spurious character of the notes, the respondent rescinded the transaction, tendered the notes to appellants and demanded payment of them, which the appellants refused; that by reason of the frauds he was damaged, etc.

The appellants severally demurred to the complaint on the ground that no cause of action was stated. On the demurrers being overruled, they answered jointly, denying the contract and fraud alleged, and, by way of separate answer, averred that the respondent and Vincent entered into a partnership for the conduct of the banking business at Cheney; that the sum paid the O. K. Gold Mining Company was paid out, under the direction of Vincent, on a loan made by Vincent to that company of the money of the Bank of Cheney; and that neither the appellant bank nor Glidden had anything to do with the transaction, further than to transfer the account, under Vincent's direction, on the books of the appellant bank. The respondent replied, denying the new matter alleged. On the issues thus made a trial was had, which resulted in a verdict and judgment for respondent for the sum of $1,536.75.

1. The first assignment of error is that the court erred in overruling the demurrer to the complaint. That the complaint is sufficient as to the appellants Vincent and Glidden is not here seriously disputed. On the part of

the bank it is argued that the agreement set forth in the complaint was one of partnership; that the respondent was bound to know that it was beyond the power of a national bank to enter into a partnership agreement, and hence there were no representations on the part of the bank on which he had a right to rely; that, if there is any liability at all on the part of the bank to respondent, it is only on contract to recover a balance of account due from the bank.

We think the demurrer was properly overruled. It is true a corporation, as a merely legal entity, can have no will, and cannot, of itself, act at all. But in its relation to the public it is represented by its officers and lawfully authorized agents, and their acts in the course of corporate dealings are, in law, the acts of the corporation. Whatever the rule may have been formerly, it is now settled beyond controversy that a corporation is liable to the same extent, and under the same circumstances, as a natural person, for the consequences of its wrongful acts, and will be held to respond, in a civil action, at the suit of an injured party, for every wrong which it commits, however foreign to its nature, or beyond its granted powers the wrongful transactions may be. In such cases the doctrine of *ultra vires* has no application. *National Bank v. Graham,* 100 U. S. 699; *Merchants' Bank v. State Bank,* 10 Wall. 604; *State v. Morris, etc., R. R. Co.,* 23 N. J. Law, 360; *Denver & R. G. Ry. v. Harris,* 122 U. S. 597 (7 Sup. Ct. 1286); *Alexander v. Relfe,* 74 Mo. 495; *Buffalo Lub. Oil Co. v. Standard Oil Co.,* 106 N. Y. 669 (12 N. E. 825); *Jackson v. St. Paul F. & M. Ins. Co.,* 99 N. Y. 124 (1 N. E. 539); *Nevada Bank v. Portland National Bank,* 59 Fed. 338; Thompson, Corporations, §§ 6329, 6279.

2. In the court below, after respondent had rested his case in chief, the appellants challenged the sufficiency of the evidence to sustain a verdict against them, and moved the court to direct a verdict against the respondent. After

the evidence was all in, they renewed their objection and motion, and after judgment moved for a new trial, setting up the same ground. These several objections and motions were overruled by the lower court. The appellants in this court earnestly insist that the court erred in so doing. It is insisted, (1) that there was no evidence before the jury sufficient to make a *prima facie* case against the appellants; and, (2) if there was a *prima facie* case made, the evidence of the appellants so overcame the respondent's case as to make it apparent that the jury disregarded the evidence, ignored the instructions of the court and arrived at their verdict through the influence of passion and prejudice. This calls for an examination of the evidence.

We think no useful purpose would be subserved by setting out the evidence in detail; and that it is sufficient to say that the record discloses some evidence from which the jury could reasonably infer that the two notes of the O. K. Gold Mining Company were the property of the appellant bank; that the payor was insolvent, the notes worthless, and that the appellants, knowing of this, without the consent of respondent, caused the notes to be forwarded to him and his account with the appellant bank to be charged with the face value of the notes; falsely representing that the notes were taken for a loan of respondent's money made by one of the appellants to the mining company; that the mining company was solvent, and that the notes would be paid on demand, and that the respondent was injured thereby to the amount of the verdict. This would make a *prima facie* case.

On the second proposition nothing is pointed out to us in the record, and we have discovered nothing, other than that the weight of the evidence may appear to be against the respondent, which would indicate that the jury were influenced in arriving at the verdict by passion, prejudice or other arbitrary motive, or that the verdict was not the

deliberate judgment of the jury upon the evidence before them. But the fact that the weight of the evidence may appear to, be with the other side is not, alone, sufficient to warrant the court in reversing a judgment. To do so for this reason is to usurp the functions of the jury, to make this court the final arbiter on all questions of fact as well as of law, and to deny the constitutional right of a litigant to have the facts of his case determined by a jury. This doctrine has been repeatedly announced by this court: *Graves v. Griffith, etc., Banking Co.*, 3 Wash. 742 (29 Pac. 344); *Booth v. Columbia, etc., R. R. Co.*, 6 Wash. 531 (33 Pac. 1075); *Dillon v. Folsom*, 5 Wash. 439 (32 Pac. 216); *Bucklin v. Miller*, 12 Wash. 152 (40 Pac. 732); *Robertson v. Woolley*, 12 Wash. 326 (41 Pac. 48); *Lambuth v. Stetson & Post Mill Co.*, 14 Wash. 187 (44 Pac. 148); *Miller v. Bean*, 13 Wash. 516 (43 Pac. 636); *Brown v. Seattle City Ry. Co.*, 16 Wash. 465 (47 Pac. 890); *Tacoma v. Tacoma Light & Water Co.*, 17 Wash. 458 (50 Pac. 55).

It is true that this court in the case of *Guley v. Northwestern Coal & Transportation Co.*, 7 Wash. 491 (35 Pac. 372), reversed a judgment rendered on a verdict of a jury because, in the opinion of a majority of the court the decided weight of the evidence was against the verdict. In that case the court said:

" While we shall ordinarily be very slow to interfere with the verdict of a jury, where the testimony is conflicting, we do not think justice would be done were this one allowed to stand. There may be, and sometimes are, cases where the testimony of a single witness, even a child, will outweigh that of many opposed where there are circumstances of suspicion connected with them. But there' was not, in this case, a single attempt to break down or impeach a witness for the defendant; and much of what they did say that was material was not contradicted by the plaintiff, though he was called in rebuttal. Credible

witnesses cannot be set aside in this way, and a verdict supported on the uncorroborated testimony of a single witness, and he the party most interested. Where the clear weight of the evidence is with either side, there is no substantial conflict, and the court should take the case from the jury."

Two members of the court dissented from the conclusions reached by the majority, and a strong dissenting opinion was filed. In the subsequent case of *Brown v. Seattle City Ry. Co., supra,* this court, commenting upon the *Guley Case,* said that it did not favor any extension of the rule announced therein; and in the case of *Tacoma v. Tacoma Light & Water Co., supra,* it was said:

" We think the court in *Guley v. Northwestern Coal, etc., Co.* went beyond the rule in applying it to the facts in that case."

In neither of the cases last cited was the *Guley Case* directly overruled; but, whatever may remain of it as authority, this court will not follow it to the extent of holding that it will, in any case, where there is a substantial conflict in the evidence, reverse a judgment founded upon the verdict of a jury, because it may be of the opinion that the weight of the evidence is contrary to the conclusion necessary to be reached in order to sustain the judgment.

3. On cross-examination of the respondent, it was shown that after he had discovered the fraud practiced upon him and had tendered the notes back to the appellants, he treated them as his own by attempting to negotiate and dispose of them. This, the appellants contend, operated to estop respondent from complaining of the fraud, and bars his right to recover in any form of action. But we think the rule is not so broad as the contention of the appellants. There is a wide distinction between an action brought to rescind a contract on the ground of

40—20 WASH.

fraud, and an action to recover damages for fraud arising out of a contract. The action to rescind is of an equitable nature, and the party seeking equity must do equity. On discovering the fraud, the party injured must tender back to the other party the benefits of the contract, so far as received by him, and place the other party as nearly as possible *in statu quo*. He must act promptly, keep his tender available, and bring his action without unreasonable delay. The action for damages is a law action for a money judgment, requires no tender, and may be brought by the injured party at any time within the statute of limitations. Nor does an affirmance of the contract after discovery of the fraud extinguish the right to an action for damages on account of the fraud. An affirmance bars only the right to rescind. All other remedies remain unimpaired. *Love v. Oldham,* 22 Ind. 51; *Buena Vista F. & V. Co. v. Tuohy,* 107 Cal. 243 (40 Pac. 386); *Hunt v. Blanton,* 89 Ind. 38; *Sackman v. Campbell,* 15 Wash. 57 (45 Pac. 895); Kerr, Fraud, p. 330.

The present action is of the latter class, and was so recognized by the learned judge who presided at the trial of the cause in the court below. His refusal to instruct the jury, as requested by appellants, to the effect that such conduct on the part of respondent barred his right to recover, was not error.

4. A part of the charge of the court to the jury was as follows:

" The issues for you to try are, (1) whether or not the defendants or any of them entered into the fraudulent scheme or conspiracy alleged in the complaint; (2) whether or not in pursuance of such fraudulent scheme or conspiracy (if you find from the evidence such existed) defendants or either of them induced plaintiff to deposit his money in the defendant, the Old National Bank, and to receive therefor the two notes of the O. K. Gold Mining Company mentioned in the complaint; (3) if you find

from the evidence that such conspiracy or fraudulent scheme existed and that through the same the plaintiff was induced to take the two said notes, then you must find from the evidence what, if any, damages plaintiff suffered thereby. . . . It is not necessary for the plaintiff to recover that the exact fraud alleged in the complaint be proven. It will be sufficient if the defendants or either of them by agreement or understanding expressed or implied, by fraudulent means substantially as alleged in the complaint deprived the plaintiff of his money. . . . If you find from the evidence that the defendants or any of them were guilty of the fraud complained of and set forth in plaintiff's complaint and that by reason thereof the plaintiff was induced to take the two O. K. Gold Mining Company notes mentioned, and the defendants or any of them took and received therefor any of the plaintiff's money, then you must find for the plaintiff in the sum of money so taken by the defendants or either of them. . . . If you find further from the evidence that the State Bank of Cheney was so charged with said notes through and by virtue of the fraud of the defendants or either of them, as alleged in the complaint, then the plaintiff would be entitled to recover in this suit the difference between the sum so charged and the actual value of said notes."

It is objected by the appellants that these instructions were erroneous because under them the jury were authorized to find the appellants guilty of fraud not alleged in the complaint; and, if they found one or more of the appellants guilty of the fraud charged, they were authorized to find a verdict against each and all of the defendants. Standing alone, this part of the charge may be subject to the criticism of the appellants. But it is a familiar principle of law that the court's charge to the jury must be read as a whole, and, if the whole charge fairly states the law of the case, as applicable to the facts, it will not work a reversal, even though disconnected portions of the charge may state the law too broadly. It is not practicable for

the court to incorporate in each paragraph of the instructions the exceptions and modifications of the general rules therein announced.  To do so would lead to prolixity, and tend rather to mislead and confuse the jury than to enlighten them.  In this case, as a limitation upon his general statement, the court distinctly told the jury that they were authorized to find for or against any one or more of the defendants accordingly as they should determine the evidence warranted; and at the request of the appellants charged:

" You can render a verdict in this case in favor of the plaintiff against any one or more of defendants, but you cannot render a verdict against any of the defendants against whom there is not clear and positive proof.  I advise you further as a matter of law that if the plaintiff has not proved a case of express fraud such as I have heretofore defined to you, involving knowledge on the part of the defendants and the willful and corrupt purpose on their part to cheat and defraud plaintiff, the plaintiff cannot recover.  He cannot recover upon any other cause of action or theory except that set forth in the complaint."

As thus modified, we do not think that the general statement of the court in the instructions complained of could have anywise misled the jury.

5. The appellants complain of certain rulings of the court made at the time of the trial in the admission and rejection of evidence.  A careful inspection of the record does not disclose error sufficiently prejudicial in such rulings to warrant a reversal of the case.

The judgment will be affirmed.

GORDON, C. J., and DUNBAR, ANDERS and REAVIS, JJ., concur.