[No. 14412. Department Two. May 6, 1918.]

L. H. BROWN, *Appellant*, v. A. C. JAMISON *et al.*,
*Respondents.*[1]

TRIAL—ORDER OF PROOF. It is not error to refuse to reopen a
case in rebuttal to establish a fact, which, if material, the plaintiff
should have presented in his case in chief.

APPEAL—HARMLESS ERROR—INSTRUCTIONS. Upon an issue as to
fraud, vitiating a written contract, it is not prejudicial error to
instruct that the proof of fraud must be clear, positive and con-
vincing, where the jury could not have been misled by the use of
the word "positive."

FRAUD—SETTLEMENT—CONCEALMENT—ISSUES. Where a settlement
was made of an option contract prior to defendant's sale of the
subject-matter, plaintiff, suing to set aside and entirely evade the
settlement, is not entitled to an instruction that it was defendant's
duty to notify plaintiff of the sale.

Appeal from a judgment of the superior court for
Spokane county, Blake, J., entered May 2, 1917, upon
the verdict of a jury rendered in favor of the defend-
ants, in an action on contract, after a trial on the merits.
Affirmed.

*Cannon & Ferris*, for appellant.

*Post, Russell, Carey & Higgins* and *A. E. Gallagher*,
for respondents.

MOUNT, J. — This action was brought to recover
$41,389, being one-third of the selling price of certain
mines in which the plaintiff claimed to be interested
with the defendants. Upon issues joined, the case was
tried to the court and a jury, resulting in a verdict for
the defendants. The plaintiff has appealed.

It appears that, in June, 1915, the respondent A. C.
Jamison requested the appellant to go to Salmo,
British Columbia, to secure an option to purchase cer-

[1]Reported in 172 Pac. 853.

tain mining claims known as the H. B. Group. The appellant secured the option as desired by the respondent. Thereupon the respondent gave to the appellant a statement as follows:

"Spokane, Wash., June 24, 1915.

"This is to certify that L. H. Brown is entitled to a one-third interest in the Benson and Ross option contract dated June 24, 1915, on what is known as H B group mines at Salmo, B. C. in consideration of his obtaining said contract for me and in my name and in consideration of said L. H. Brown paying all expenses of obtaining said contract and any necessary changes thereof. (Signed) A. C. Jamison."

Thereafter the appellant was requested to, and did, secure some changes in the option. Respondent attempted to sell these mines, but was unable to do so. After a short time it was necessary to advance money in order to protect the option. Appellant declined to advance any money for that purpose. About this time one R. K. Neill became interested, and the respondent Jamison secured Neill to go to Salmo and get a new option upon the H. B. Group and other mines in the district. Mr. Jamison informed Mr. Brown of this fact. Mr. Brown first objected, but afterwards consented, providing Mr. Neill would sign a letter which was prepared by the appellant as follows:

"Spokane, Wash., July 24th, 1915.
"Mr. A. C. Jamison,
"Spokane, Wash.
"Dear Sir: Beg to acknowledge receipt from you this day of assignment from you to me covering all your rights in the Benson Ross option to you of the date of June 24th respecting the mining property in B. C. known as the H. B. Group, and this letter will act as an acknowledgment that I received the same, together with a like assignment of the Horton Billings interests covered by the 'Smith Curtis' option for the purpose of surrendering the same and receiving from

the owners of said mining properties described in said options a new option or contract respecting the same and the development and purchase thereof. That the new contract or option from both sets of owners shall run to R. K. Neill and A. C. Jamison, both holding an equal interest therein, or in my name and in which case I will execute to you a proper transfer or assignment of a half interest therein to effect the same result.

"It is understood that in all matters pertaining to these mining properties, including the Zincton Group, our interests are to be equal and we are to share equally therein, subject to the interest of L. H. Brown of Spokane, Washington, therein, which shall be assumed by us both in equal shares.

"Yours truly,"

After preparing this letter, the appellant gave it to Mr. Jamison to have Mr. Neill sign it. When this letter was presented to Mr. Neill by Mr. Jamison, Mr. Neill refused to sign it, but did so after making a change so that the last paragraph thereof read as follows:

"It is understood that in all matters pertaining to these mining properties, including the Zincton Group, our interests are to be equal and we are to share equally therein, subject to the one-third interest of L. H. Brown of Spokane, Washington, in the Benson & Ross option, which shall be assumed by us both in equal shares. If R. K. Neill fails to close deal with Ross & Benson of Salmo, B. C., in that event I will return your check for one thousand dollars, including all papers and contracts made between A. C. Jamison, Ross Benson. If deal closed with Billings Horton Rawson, I, R. K. Neill, will divide with A. C. Jamison.

"(Signed)  R. K. Neill."

After this letter was signed by Mr. Neill, he went to British Columbia and entered into new option contracts containing claims in addition to those secured by the appellant. The appellant testified that Mr. Jamison did not show him this letter, but stated that Mr. Neill

refused to sign the letter. Mr. Jamison, on the other hand, testified that he took the letter the next day and showed it to Mr. Brown, and that Mr. Brown was dissatisfied with it and proposed a settlement so that he might be released from any interest in the contract. Thereupon Mr. Jamison and Mr. Brown, on the 26th day of July, entered into a contract as follows:

"Spokane, Wash., July 26, 1915.

"Received of A. C. Jamison check for seventy dollars covering expenses in full for two trips to Nelson, B. C., in reference to Benson & Ross option on H. B. mine at Salmo, B. C. An additional attorney fee is to be paid providing new option is obtained either in my name or that of R. K. Neill or any one for us and at the time possession of the property is given, said attorney fee to be whatever A. E. Gallagher considers right and proper, but not, however, to exceed three hundred dollars.

"This cancels all interest in agreement with Jamison for an interest in the previous option made by Benson and Ross or in any profits derived therefrom, and such agreement is hereby cancelled and surrendered. Provided no fee is to be paid if property is not taken over under existing or new option."

Mr. Jamison, at the time this agreement was entered into, paid Mr. Brown the $70 therein mentioned. Mr. Neill proceeded to British Columbia and obtained new options. Afterwards Mr. Neill and Mr. Jamison effected a sale of their interest in the property for $125,000. Mr. Brown was not paid the balance under the agreement of July 26th because Mr. Gallagher, mentioned in the agreement, refused to act as arbitrator. Afterwards, in September, Mr. Brown agreed with Mr. Jamison that, upon the payment of $200, he would be satisfied. At that time Mr. Brown did not know that a sale of the property in the meantime had been made. Mr. Jamison caused the $200 to be paid,

and later this action was brought by Mr. Brown to recover one-third of the selling price of the mines, or one-third of $125,000, less $270 paid. These are in substance the facts.

It was claimed upon the trial that, at the time of the agreement of the appellant to receive for his services the sum of $70 and such other sum not exceeding $300 as Mr. Gallagher should consider right in lieu of his one-third interest in the H. B. Group of mines, the appellant did not know that Mr. Neill had signed the letter of July 24, 1915, above quoted, and because he was not so informed, a fraud was perpetrated by the respondent upon the appellant, and, for that reason, he was not bound by the contract for expenses and the $200 which he had accepted. Upon the trial of the case the appellant was examined with reference to the letter written by him and given to Mr. Jamison to be signed by Mr. Neill. Appellant testified, as we have stated above, that Mr. Jamison told him that Mr. Neill refused to sign that letter. Mr. Jamison testified that he showed Mr. Brown the letter as signed by Mr. Neill and that Mr. Brown was dissatisfied and desired to have Mr. Jamison pay him his expenses and a reasonable fee, which was agreed upon not to exceed $300, and be relieved from any interest in, or further liability on account of, the options. Thereafter, and in rebuttal, the appellant offered to show that the first time he saw that letter it was in the hands of Mr. Gallagher after the settlement had been made. This was objected to on the ground that it was immaterial, and the court sustained the objection. The appellant now argues this was error. If the appellant deemed the fact material as to where and when he first saw the letter, we think it was his duty to go into that upon direct examination when he was presenting his *prima facie*

case. Not having done so, he must have concluded at that time this fact was not material. We think it was clearly not prejudicial error for the court to refuse to reopen the case in rebuttal and again go into the question as to when and where and under what circumstances the appellant claimed to have first seen the letter after it was signed by Mr. Neill.

Appellant next argues that the court erred in giving instruction No. 2 to the jury. This instruction had reference to the fraud alleged, and after stating the rule with reference to vitiating a contract for fraud, the court said:

"I instruct you that in order to avoid the effect and force of the subsequent agreement above referred to, whereby he (appellant) accepted $200 as fees and $70 for expenses in obtaining the Benson and Ross option, the burden is upon him to satisfy you by evidence clear, positive and convincing of all of the following facts: . . ."

The court then proceeded to state the facts upon which the appellant claimed the right to vitiate the contract. It is urged by the appellant that the court erred in using the words "clear, positive and convincing," and it is argued at length that the use of the word "positive" was error because it prevented the jury from considering circumstances in the case. It is not uncommon in instructing juries upon this question for the court to say that such evidence in proof of fraud must be clear and convincing.

In the case of *Quinn v. Parke & Lacy Machinery Co.*, 9 Wash. 136, 37 Pac. 288, this court said:

". . . it is as well settled that nothing short of clear, positive and convincing proof will suffice to establish the fact of such rescission against a party who denies it and seeks to sustain the integrity of the writing."

In *Pronger v. Old National Bank,* 20 Wash. 618, 56 Pac. 391, we approved an instruction which stated:

". . . but you cannot render a verdict against any of the defendants against whom there is not clear and positive proof."

The terms clear, positive and convincing, as used in the instruction, were not intended as descriptive of the kind of proof, but were descriptive of the measure of proof. If we were to hold that the use of the word "positive" was technical error, we are satisfied that the jury could not have been misled by the use of that word in the connection in which it was used in this instruction, and, if error, it would be harmless.

It is next argued that the court erred in refusing to give an instruction as follows:

"The court instructs you that it was the duty of defendant to inform the plaintiff of the fact that a contract for the sale of said properties had been made with Cullen and Bacon on August 27, 1915, and that if you find from the evidence that defendant did not so inform plaintiff, and plaintiff did not know thereof, then plaintiff would not be bound by the settlement wherein he accepted $200, unless you believe from the evidence that if plaintiff had known of said fact he would have made said settlement in any event."

We think the court properly refused to give this instruction, because the contract for the sale of the mines was made more than a month after the agreement between the appellant and the respondent to settle for $70 and not to exceed $300. After that settlement was made, if it was made in good faith as the jury found— and we have no doubt from the record that it was so made—it was clearly not the duty of the respondent to inform the appellant of a sale after that time, unless it was to show that he was entitled to $300, rather than $200. In this action he does not claim that he is en-

titled to $300 provided for in the settlement contract, but is attempting to entirely evade that contract.

We find no reversible error in the record.

The judgment is affirmed.

ELLIS, C. J., HOLCOMB, and WEBSTER, JJ., concur.

CHADWICK, J., concurs in the result.