# Frank Rose, Plff. in Err., *v.* West Philadelphia Passenger Railroad Company.

Whether the servants of a street railway company were negligent and whether there was contributory negligence are questions of fact for the jury and were properly submitted to them in this case, as was also the question whether a release executed by the plaintiff was obtained by fraud.

(Argued January 6, 1888. Decided January 23, 1888.)

January Term, 1887, No. 81, E. D., before Gordon, Ch. J., Paxson, Sterrett, Green, Clark, and Williams, JJ. Error to the Common Pleas No. 4 of Philadelphia County to review a judgment for defendant in an action for damages for personal injuries. Affirmed.

On August 16, 1883, Frank Rose, while crossing Market street to put a basket on the platform of a west bound street car, was struck by a car going east and sustained severe injuries, for which he brought suit. The defense was that the injury was caused by the negligence of the plaintiff and that he had executed a release. Issue was joined on the question of defendant's liability and also as to whether the release was obtained by fraud.

The court, Willson, J., charged the jury as follows:
The plaintiff has brought suit to recover damages for injuries

Note.—A release secured by fraud is of no effect. People's Natural Gas Co. v. Millbury, 2 Monaghan (Pa.) 145. But the proof of the fraud must be clear. Holmes v. Union Traction Co. 199 Pa. 229, 48 Atl. 974; Julius v. Pittsburgh A. & M. Traction Co. 184 Pa. 19, 39 Atl. 141; Detwiler v. Graham, 17 Phila. 300. Where there is a conflict of testimony, the question is for the jury under proper instructions. Arthurs v. Bridgewater Gas Co. 171 Pa. 532, 33 Atl. 88; Gibson v. Western N. Y. & P. R. Co. 164 Pa. 142, 44 Am. St. Rep. 586, 30 Atl. 308.

which resulted to him and his property, on the 16th of August, 1883, by reason, as alleged by him, of negligence on the part of the employees of the defendant company in the management of its cars, at the crossing of Second and Market streets.

The fact that the plaintiff has brought this suit constitutes no ground whatever upon which he is entitled to a verdict. [The fact that he was hurt by a railway car constitutes by itself no reason whatever why he is entitled to a verdict; the fact that he is a poor man constitutes no reason, nor the fact that his property was injured. All these things are outside of the main thing you have to consider.] [1]

The gist of the action, the point upon which it turns, is the alleged negligence of the company.

If there was no such negligence on the part of the employees of the railway company, which brought this injury upon the plaintiff without any contributory negligence of his own, he would in no event be entitled to recover a verdict. This is altogether outside of any question connected with the release, which we will consider subsequently.

Now was the defendant company, or rather its employees, negligent at the time this man was injured? Or was he injured in consequence of his own negligence? Upon that branch of the case you have his own statement, upon which to find out who was negligent. He says that he had been to some market in the southern part of the city, and was walking up Second street, on the east side; that a car was approaching from the east, going west; that the car stopped on the east side of Second street, when he approached with a basket of peaches on his shoulder and endeavored to put it on the front platform; that there then suddenly appeared another car of the same line, when he threw up his hands, and said: "For God's sake, stop!" but that the car came on, and that he was crushed between that car and the other car, which, according to his testimony, was standing still.

Even if these statements are correct (and I do not intend to indicate that they are not, by the form in which I put my sentence), even if they are correct, it would still be a question for you to consider, in view of all the facts of the case, whether the plaintiff, as a man of reasonable and ordinary care and prudence, should have done what he did under the circumstances. As I have already said, if he himself was guilty of any carelessness or negligence which brought about this accident, then, no

matter what negligence there was on the part of the railway company, he is not entitled to recover.   If there was any contributory negligence on the part of the plaintiff, whereby the injury resulted to him or to his property, he is not entitled to recover.

Now if he approached this car with a basket of peaches on his shoulder, and the car was standing in the middle of the street—if he approached this car, on which he intended to put his basket, and saw another car approaching him so near that it could not reasonably be expected to stop, he had no right to stop there and try to put his basket on, as a careful man.   In such a case as that I should say it would be reasonable for you to infer that there was contributory negligence.

It is also entirely proper for you to consider the question whether, approaching the car in the position in which he said it was, it was not his duty to look in order to see his danger.   It is an element for you to consider whether it would not be a prudent thing for a man with a basket on his shoulder, and wanting to go and put it on the platform of a car, to look out for cars approaching, he being familiar, as all of us are, with the way in which cars run, and knowing, as every person in Philadelphia does know, that in Market street there are several lines or tracks of cars moving in opposite directions.   In this connection it is for you to consider whether, being in close proximity to a car coming from the west, if he had looked, he would not have seen it and would not have been saved from injury.

But if you are of the opinion from the testimony, if your belief or judgment from the testimony is that he did all that a careful and a prudent man, looking out as a man ordinarily does for his own protection under the circumstances, should do, and that the defendant should have done something which it did not do (in other words, that the whole negligence was on the part of the defendant company), then you would be entitled to find a verdict for the plaintiff on this branch of the case—provided that you were not of the opinion that the release stood in the way.

But the plaintiff's views of the case and the theory of the defendant are entirely different.   There have been several witnesses produced here, to the testimony of some of whom you should pay special attention because, so far as it appears, they were entirely disinterested.   I do not say that the plaintiff is to be disbelieved because he is the plaintiff; nor do I say that

the agents of the company are to be disbelieved because they belong to the defendant corporation.   But we all of us naturally, for very sensible reasons, in cases where witnesses differ, prefer to have the testimony of persons who are entirely disinterested. Now we have the testimony of Mr. Lewis and Mr. Derrickson as to the car going west, and they have no connection with the matter except as eyewitnesses—are not interested in the parties concerned here.   [They testify, not exactly alike in regard to all the details of the matter; but you are not to discredit them on that account.   The fact that several witnesses, seeing the same occurrence, do not remember alike all the *minutiæ,* is no reason for disbelief, but rather a reason to the contrary.]   [2]

I want to call your attention to another thing, in this connection, important to consider.   This occurrence did not take as long in its happening as the case has taken to be tried, as you will easily see.   It was not a thing that consumed an hour's time, or more than an hour.   It was a momentary thing. It was not very long in its occurrence, and therefore you can very readily understand how the plaintiff and the other witnesses, in testifying about it, each looking at the thing as it happened, might readily differ somewhat. They may not exactly remember the number of feet and inches, for instance, but that is not material to an understanding of the occurrence.   Those witnesses say that the plaintiff was standing on the south side of Market street, at the crossing, as the car approached from the east; [that he was eating a peach, one of them says, which may or may not be material, but which may have contributed to divert his attention from noticing what he otherwise would have noticed;]   [3] that he saw the car approaching and started for it; and that, at the same time, there was a car coming from the west, on the line of Second street.

It is not perhaps material whether the horses were on the east side of the Second street track or not, as the two cars were so near together, according to the testimony, that there could have been but a moment of time at the longest for the thing to have happened.   If the horses were walking, as one witness says they were, it would only have taken a moment for them to make about twenty feet, at the outside, in going from the middle of the street to the east side of it.   These witnesses say that the plaintiff started from the south side to get on the car going west. The theory they have is evidently this:   That he wanted to get

on that car, with his peaches—started to get on that car, and did not pay that attention which he ought to have paid—did not have a thought in his mind of what might happen, and directing his course to the car which he wanted to get did not notice the approach of the other car; [that he started to get on the one car when the other car was coming—and one of the witnesses says that he had to turn out of his course a little because the horses hesitated a moment or stood still; and that choosing between the risks, when the cars were so near together, he was caught between the two cars and was hurt. Now if that was the way it happened, as I should suppose you would infer from the testimony of these witnesses, if the plaintiff did take that risk, he must suffer the consequences. In other words, there was contributory negligence on his part. A man cannot take such risks with passenger railway cars and then if he gets hurt ask the company to pay him damages.]    [4]

Mr. Derrickson said that he was in the habit of jumping off cars in motion. He knew that he was taking risks—he knew that he might slip or fall in doing so, and if he got hurt the railway company would not be responsible for damages. Although a man may be injured by the act, in some sense, of a railway company, if he takes such a risk he is not in a position to ask that the railway company shall give him compensation for the injury that results.

Now the plaintiff has testified that the car on which he intended to get stopped for him on the east side of Second street; but the testimony of three witnesses is that the car did not stop for him. If the car did not stop for him, it seems to me that the case of contributory negligence is stronger against him. If there was no invitation by the defendant company, in stopping its car, for him to get upon it in the position in which he was, certainly his conduct in attempting to get upon it, while it was in motion in the middle of the street, would seem to negative his prudence and judgment and bear strongly upon the question of contributory negligence.

Now I do not think it necessary to say more upon this branch of the case. I leave it to you, as I have stated it, having tried to make it clear to you. If the plaintiff was injured in the way he claims on the 16th of August, 1883, by the negligence of the railway company, through its agents or employees—by their negligence in failing to do something which they ought to have

done, or could reasonably have done—(that is, by their negligence alone), then he is entitled to a verdict against the company, unless he is otherwise prevented by the release. On the other hand, notwithstanding negligence on the part of the company, if there was a want of judgment and care on his part, of that ordinary prudence which a man ought to exercise in society —if that contributed to bring about the accident, then he cannot recover.

Now we come to another question, if you think there was no contributory negligence on the part of the plaintiff, but that the accident was produced by the negligence of the defendant alone: the question of the release. It is a paper which, if it operates between the parties here, is an end of the plaintiff's case, because it is in terms an entire release and extinguishment of all his claims against the company, by reason of the things that happened on that day. I have concluded to leave this question to you; but it is important that I should guide you in your consideration of this branch of the case. A paper of that character is a solemn instrument. By solemn, I mean that the law regards it as of high order.

[It is not to be set aside upon suspicion, not to be set aside upon any but the strongest and clearest testimony.] [5]

It is alleged here that the instrument was obtained from the plaintiff by fraud, and therefore that it does not operate. Now fraud is not to be inferred against a man quickly. The presumptions are that men act honestly and deal fairly with each other. [To infer fraud from anything but the strongest and most satisfactory proof is to infer a criminal thought or disposition in a man, which is against the presumption of the law.] [6]

Besides, when a man executes an instrument of writing and puts his name to it, or his mark, which is just as good as his name, except for strong and satisfactory proof he ought to be held to the paper signed. A man is not to be encouraged to sign a paper and then to say: "I did not mean it." I lay down these general principles and say that you must not treat this part of the case lightly. It is no evidence of fraud whatever that the bargain is a bad one. You have no right to say that the release must not operate, because the plaintiff took less money than he ought to have had or than the company ought to have paid him. If you think he ought to have had what is claimed,

$500 or $600, you have no right to say that the release is not good because he only got $60. It does not have any relation to the question whatever.

[It has been said here, upon this subject of fraud, that in the negotiations these two gentlemen, when they got the paper executed, waited awhile for the wife of the man to come in. It is quite proper and it is my duty to say to you that this circumstance is quite the opposite of evidence of fraud.] [7]

Why, if they were there to impose upon this plaintiff a paper which they did not intend to have the operation that he had in his mind, did they wait until his wife, who was able to read and write English without difficulty, should come in? It is no evidence of fraud, and it is a circumstance of considerable weight in the case. With reference to the paper itself you have the fact that this woman (a woman apparently of some education, who certainly could read and write English) herself signed the paper, at or about the same time that her husband put his mark to it. It is claimed that he did not know what he was signing; in other words, that misrepresentations were made to him; that he did not know he was giving up his rights to a certain portion of the claim; that fraud was perpetrated.

Now, unless there was such fraud, this release estops him. I do not mean to say that the fraud must have been with reference to these matters only; but unless there was fraud of some kind whereby he was induced to do a thing, not knowing what he was doing—[if he understood what he was doing when he signed that paper, and the presumptions are that he did, this release estops him. Besides, there is testimony that his wife read it to him in a loud and clear tone of voice; and, to my mind, every indication is that the matter was done in good faith. In view of the sacredness which the law attaches to papers of this kind you are not to find against the validity of the paper on the mere ground that the bargain was a hard one.] [8] I lay that down as a principle. It is perfectly legal and proper for any man or company to try to settle a claim. It is perfectly proper to do it [and it does not militate against the transaction if the company endeavored to get the best of it.] [9] At the same time, if you believe there was a fraud perpetrated, then it would be not only proper, but it would be your duty, to say so by your verdict.

[In this connection there is one other thing I want to say

which escaped me. It has been said that the plaintiff was induced to sign this paper by encouragements that he would be taken into the employ of the company. I instruct you, if you believe that was the case, and he was not taken into the employ of the company, that it would not constitute a fraud whereby the release would be avoided. It would be a representation or statement which possibly could be made out as a contract upon which the plaintiff could recover against the railway company, but not in this case.] [10]

Verdict for defendant, and judgment thereon.

Plaintiff took this writ, specifying for error: 1–10, the portions of the charge inclosed in brackets.

*William W. Wiltbank* and *Wm. B. Robins,* for plaintiff in error.—The following cases sustain our contention that under a plea *per fraudem,* there is no question as to number of witnesses: Thoroughgood's Case, 2 Coke, 5 *a, b;* Ballentine v. White, 77 Pa. 20; Gordon v. McCarty, 3 Whart. 407; Jackson v. Summerville, 13 Pa. 359; Levick v. Brotherline, 74 Pa. 149; Kaine v. Weigley, 22 Pa. 179; Abbey v. Dewey, 25 Pa. 413; Ott v. Oyer, 106 Pa. 6; McGrann v. Pittsburgh & L. E. R. Co. 111 Pa. 171, 2 Atl. 872; Hirschfeld v. London, B. & S. C. R. Co. L. R. 2 Q. B. Div. 1; Sargent v. Wedlake, 11 C. B. 732; Chicago, R. I. & P. R. Co. v. Doyle, 18 Kan. 58; Eagle Packet Co. v. Defries, 94 Ill. 598, 34 Am. Rep. 245.

The doctrine that, if it is sought to reform an instrument, there must be evidence adequate to outweigh a responsive answer is illustrated by recent adjudications. Phillips v. Meily, 106 Pa. 536; Walker v. France, 112 Pa. 203, 5 Atl. 208.

But this doctrine does not apply to the present case.

*David W. Sellers,* for defendant in error.—The charge was correct and fair.

The evidence to establish fraud in procuring a written contract must be clear, precise, and indubitable. Rowand v. Finney, 96 Pa. 196; Boyd v. Breece, 3 Phila. 206; Callan v. Lukens, 89 Pa. 136; Greenawalt v. Kohne, 85 Pa. 375.

PER CURIAM:

The rulings of the court below, in the case before us, are so obviously correct and so well stated as to render discussion of

them unnecessary.    We can sustain none of the assignments of error.

The judgment is affirmed.