[No. 697.  Decided April 14, 1893.]

PETER PEDERSON, *Respondent*, v. SEATTLE CONSOLIDATED STREET. RAILWAY COMPANY, *Appellant*.

EVIDENCE — RELEASE — BURDEN OF PROOF — NEW TRIAL.

An allegation by a plaintiff that his signature to a written release exempting defendant from liability for injuries received through the latter's negligence was secured from him by fraud is not sufficiently supported by proof on plaintiff's part that he was misinformed as to the contents, and did not understand the nature of the paper he signed, while three witnesses, who were present at the time, testify that the release was read over and explained to plaintiff twice before he signed it, and that he then said he understood it; especially in view of the fact that the burden of proof is upon plaintiff, and the other testimony in the cause tends to corroborate defendant's side of the issue.

A new trial may be awarded, although the verdict be supported by some evidence, where it appears that the evidence is insufficient to justify the verdict.

*Appeal from Superior Court, King County.*

*Julius F. Hale*, and *W. T. Scott*, for appellant.

*Thompson, Edsen & Humphries*, for respondent.

The opinion of the court was delivered by

ANDERS, J.— On September 16, 1891, at about eight or nine o'clock in the forenoon, the respondent entered upon one of the appellant's electric street cars in the city of Seattle, to ride to North Seattle. Before reaching the destination of the respondent, and when on Front street about fifty feet north of Blanchard street, this car, while going down an incline, collided with a wagon belonging to the appellant which was standing on the track in charge of two men, who were upon a scaffold erected upon the wagon, engaged in repairing the trolley wire. It was an open car and the respondent was sitting on the second seat from the

front.   Before the car reached the wagon, the respondent, thinking there was going to be a collision, became greatly excited and jumped off the car and fell upon the ground with such force that the result was an "extra capular" fracture of the right hip.   Soon after the accident happened, the respondent, at the suggestion of Dr. Coe, who was a physician and surgeon for the railway company, was conveyed to Grace Hospital where his injuries were treated, and where he was taken care of for a period of six and one-half months at the expense of the appellant.   Subsequently to his discharge from the hospital, the respondent brought this action for damages, and alleged in his complaint that the injury therein mentioned was caused by the negligence and carelessness of the railway company in causing its construction wagon to be upon its track, and in propelling its car against the same, whereby he was thrown with great force and violence from said car upon the street.   The answer of the appellant was — (1) A denial of negligence; (2) an allegation that if the respondent was injured it was by reason of his own negligence; and (3) that the respondent, on the 16th day of June, 1891, in consideration of the payment of certain expenses for the respondent by the appellant, which the latter then and there assumed to pay and did pay, entered into an agreement in writing whereby he released and discharged the appellant from any obligation growing out of said alleged injuries.   The respondent, in his reply, admitted signing the release, but alleged that at the time of signing the same he did not know or understand its purport; that he did not and could not read the same at the time he signed it;  that said instrument was not read or explained to him by any one;  that he was not then or at any time informed that the effect of signing the said instrument was a waiver of his claim against the appellant for damages;  that, by reason of the condition of his mind and body at the time, he was incapable of comprehending

the import or meaning of said instrument, and that the same was procured from him through the fraud and artifice of the appellant, with the intent on the part of appellant to defraud him out of his just claim against the appellant for compensation and damages for said injuries.   A trial was had by a jury, resulting in a verdict for plaintiff for $2,000, for which sum, after overruling a motion for a new trial, the court rendered judgment.

Upon the issues raised by the pleadings in this case, it· was incumbent upon the respondent, in order to succeed, to establish two facts: *First*, That the appellant was guilty of negligence proximately causing the injury of which he complains; and, *second*, that the release which he signed was procured by the fraud and artifice of the appellant, or that, by reason of his mental condition at the time, he was incapable of comprehending and understanding what he did, or the effect of his act.

The first ground of error assigned by the appellant is that the evidence is insufficient to justify the verdict in both of these particulars.   We will examine the latter proposition first for the reason that if the proof is not sufficient, under the well recognized principles of law, to support the finding of fraud, a new trial must be awarded, although, as matter of fact, the appellant was guilty of the negligence charged in the complaint.   As a general rule the presumption of law is that men act honestly and not fraudulently.   And, hence, where fraud is alleged it must be clearly and satisfactorily proved by him who alleges it. Upon this subject Mr. Bigelow, in his valuable work on Fraud, at page 123, says:

"The burden of proof in regard to an allegation of fraud, coming either from the plaintiff or from the defendant, rests upon the party who makes it.   If the plaintiff's case, originally or on replication, is that the defendant has defrauded him in a particular transaction, or that the de- . fendant is in privity with one who has defrauded him, the

burden of proof is upon the plaintiff; he must prove the fraud, which means that he must show it by clear and satisfactory evidence, such as will preponderate over presumption or evidence on the other side.   If on the other hand the defense to a suit is that the plaintiff defrauded the defendant in the supposed cause of action, or that the plaintiff is privy to one who defrauded him, the burden of proof is upon the defendant; he must prove the fraud, which means the same thing as when the burden rests upon the plaintiff.''

Where the purpose is to set aside a deed or to impeach a written instrument on the ground of fraud, by oral testimony of a party to the instrument, the rule above stated is especially applicable, and is rigidly adhered to by the courts.

In *Parlin v. Small*, 68 Me. 289, where the claim set up by the plaintiffs was that, in purchasing a farm, they were defrauded by the defendant conveying a less amount of land than was bargained and paid for by them when they took their deed, when the plaintiffs undertook to establish the alleged fraud entirely by their own testimony, the court said: ''The plaintiff must prevail, not only upon a preponderance of evidence, but such preponderance must be based upon testimony that is clear and strong, satisfactory and convincing.''

In *Gruber v. Baker*, 20 Nev. 453 (9 L. R. An. 302), the supreme court of Nevada, in speaking of the amount of evidence required to establish fraud, used this language:

''What amount or weight of evidence is sufficient proof of a fraud is not a matter of legal definition.   The proof, however, must be satisfactory.   It should be so strong and cogent as to satisfy the mind and conscience of a common man, and so to convince him that he would venture to act upon that conviction in matters of the highest concern and importance to his own interest.   It need not possess such a degree of force as to be irresistible, but there must be evidence of tangible facts from which a legitimate inference

of fraud may be drawn.    As an allegation of fraud is against the presumption of honesty, it requires stronger proof than if no such presumption existed.''

In the case of *Rose v. West Phila. Ry. Co.* (Pa.), 12 Atl. Rep. 78, was an action for negligence, charging that the defendant had, in operating its street car, run against and injured the plaintiff.    One of the defenses relied on was a release, signed by the plaintiff, and the claim of the plaintiff was, as here, that he did not know what he was signing; in other words, that misrepresentations were made to him, and that he did not know he was giving up his rights to a certain portion of the claim.    In charging the jury with reference to the release, the trial court instructed them that the release was not to be set aside upon any but the strongest and clearest testimony; that to infer fraud from anything but the strongest and most satisfactory proof is to infer a criminal thought or disposition·in a man, which is against the presumption of law.    This charge of the court was held by the supreme court of Pennsylvania, on appeal, to be ''obviously correct.''

Keeping in view the rule of law enunciated in the above authorities, and many others that might be cited, and applying it to the case now before us, the question to be determined is, was the proof sufficient to invalidate the release on the grounds alleged by the respondent?    In an early case in our territorial supreme court it was said, in effect, that courts should be reluctant to set aside a verdict where there is evidence to support it, or the evidence is of doubtful interpretation (*Gove v. Moses*, 1 Wash. T. 7), and that rule has, so far as we are informed, been substantially followed ever since.    But we do not understand the law to be that a verdict should be set aside only in those cases where there is no testimony whatever to sustain it.    Insufficiency of the evidence to justify the verdict is made a ground for a new trial by our statute; and that would seem to imply

that, in proper cases, a new trial may be awarded although the verdict be supported by some evidence.

But as a general rule a verdict should not be disturbed where there is any substantial conflict in the evidence upon which it is based, and this court has so held in numerous instances. It is the province of the jury to determine the weight of the evidence; and after they have done so, and the trial judge who has seen and heard the witnesses and observed their demeanor on the witness stand, and has thus formed an opinion as to their credibility, has sustained their verdict on motion for a new trial, the appellate court ought to be slow to molest the finding. But if, on due consideration of the evidence, it appears that the verdict is not supported by any substantial proofs, it ought to be promptly and unhesitatingly set aside, and a new trial ordered.

Now, what is the proof in reference to the signing of the release in question? The respondent testified that he was a Norwegian by birth, and had resided in this country nine years; that he could understand and speak the English language but that he could not write in that language, except his name; that his vocation was that of a brick mason, and that he understood the business well and had worked around Seattle for eight years; that right after he received the injury complained of he was taken to Grace Hospital, but by whom or at whose suggestion he did not know; that his injury was treated by Dr. Coe, and that he was able to be around on crutches in ten weeks, but that he remained at the hospital for six months and a half. He further testified that he paid nothing either for his medical treatment or his care at the hospital, and was never asked to pay any bills, and did not know who paid them. He further says that Dr. Coe bandaged his hip about four o'clock in the afternoon of the day on which he was hurt, and thereafter attended him at the hospital. The witness

denied having ever made any agreement to release the appellant from all damages in case it would pay his hospital expenses and physician's charges; and said he did not know that the paper he signed was a release, but thought it was "some regulation of the hospital, or something," but could not tell what it was. While he does not deny that a paper was read to him by Dr. Coe, in presence of Mrs. Tremaine and Dr. Weed, he asserts it was not the paper he signed, and that the language used in the release was neither explained nor read to him, and that if the words therein found had been read or stated to him he would have understood them. He does not claim that he did not understand what was explained and read to him, and yet he is not able to say what it was further than that it was something concerning the hospital, some regulation or something. As to why he signed the paper, he states that "they came with a piece of paper and told me to sign it." His testimony further shows that Dr. Coe told him, between Christmas and New Year, that he had heard that he, the respondent, was going to sue the company, and that the doctor then stated to him if he was going to do so he wanted him to get out of there, or words to that effect, but that the doctor said finally he might stay till the first of January, and he remained until that time. The above is substantially all the testimony on the part of the respondent pertinent to the execution of the release. Now, taking it all together, all that was said as well as all that was done by the respondent, we hardly think it sufficient to overthrow the presumption that the appellant acted honestly in procuring the release, even if there had been no testimony on the other side.

It is difficult to believe that the appellant would have paid respondent's medical and hospital expenses for so long a time without some agreement or understanding in regard to the matter, or without some special reason for so doing;

and it is equally difficult to understand why the respondent during all of that time made no inquiry and did not do anything to ascertain the amount of his expenses or by whom they were to be paid, if he had no agreement or understanding with anybody with regard thereto.

On the part of appellant we have the testimony of three witnesses — Dr. Coe, Dr. Weed and Mrs. Tremaine — who were present at and before the time when the release was signed by the respondent, and they state positively that it was read over and explained to respondent twice before he signed it, and that he then said he understood it.   Two of these witnesses, Dr. Coe and Mrs. Tremaine, signed the instrument as witnesses.   In fact, the appellant's witnesses say the agreement was made and thoroughly understood by the respondent before it was reduced to writing.

It appears that Dr. Coe was a passenger on the same car on which the respondent was riding at the time the accident occurred, and that he went with the respondent to the drug store where he examined him to ascertain the extent of his injuries.   At first the doctor advised him to go home, but on further examination concluded that it would be better to have him taken to the hospital for treatment.   After the respondent arrived at the hospital he expressed no desire to send for any other physician, and so Dr. Coe took charge of the case.   But he testifies that before doing so, he desired to know something as to how or by whom his charges and the hospital expenses would be paid; and that finding that the respondent, as he said, had no money, he then remarked to him that the company would pay his expenses, provided he would release them from all further liability, to which the respondent assented, and in that way the question of the release arose.   We have carefully examined all the evidence upon this branch of the case, and we are of the opinion that it is not sufficient, under the law governing the character of proof required in such cases, to justify

14—6 WASH.

the conclusion that the release was obtained by artifice or
fraud, or that the respondent was unconscious of what he
was doing when he signed it.    In the language of the su-
preme court of Nevada, in *Albion, etc., Mining Co. v.
Richmond Mining Co.*, 19 Nev. 225 (8 Pac. Rep. 480):
"The verdict of the jury cannot be sustained upon any
impartial, rational or intelligent consideration of the evi-
dence as set forth in the statement on appeal."

We think the learned judge before whom this cause was
tried committed error in modifying the appellant's fifth
request to charge the jury, by striking out the following:
"The burden of proving that, at the time of executing the
release referred to in defendant's answer, the plaintiff did
not have any understanding or information as to the effect
of the paper which he was signing, is upon plaintiff." As
we have already intimated, the plaintiff was called upon to
establish the invalidity of the release, and the burden of
proof was therefore upon him.

The appellant objects to instructions numbered 1, 2, 3
and 4, requested by the respondent and given to the jury
by the court, and claims that they are argumentative; that
they entirely ignore the defendant's theory of the case,
and give undue prominence to that of the plaintiff, and to
the evidence introduced by it.    We think the objection
cannot be maintained.   No portion of the evidence is
therein specifically mentioned or alluded to, and the in-
structions seem to be substantially in accordance with the
law.

But we are of the opinion that the court should have
given to the jury some direction, or rule, by which they
should be guided in determining the question of damages;
but as a more specific charge than that given by the court
was not requested by the appellant, we would not be in-
clined to reverse the judgment on that ground.

Instruction number three, asked by appellant and re-

fused by the court, is faulty in this, if nothing else, that the appellant thereby asked the court to instruct the jury to find for the defendant regardless of whether its servants in charge of the wagon, as well as those managing the car, used proper care and diligence to avoid the accident, and the court properly declined to submit it to the jury.

The judgment of the lower court is reversed, and the cause remanded for a new trial.

HOYT and STILES, JJ., concur.

SCOTT, J., concurs in the result.

DUNBAR, C. J. (*dissenting*).—I dissent.  The testimony, to my mind, shows clearly—(1) That the agent of the company in charge of the matter was guilty of gross negligence; (2) that the respondent was not guilty of contributory negligence; (3) that undue advantage was taken of the respondent to obtain the release which the appellant pleads in defense.

I do not question the law pronounced at great length in the majority opinion, but I assert that it does not govern this case.   The opinion does not state the circumstances under which it is alleged the release was obtained.   While this man was lying mangled and shocked by the injury, before his wounds were dressed or his mind composed, the agents of the company obtained this so-called release.   The undisputed testimony shows such a condition of mind and body as would render absolutely farcical any attempt of the respondent to enter into a contract concerning important rights.   Courts would not hesitate to set aside a contract urged and procured by a private individual under such circumstances as are proven in this case; and no different rule should be prescribed for a corporation.

Contracts, when they are honestly and fairly entered into, must be rigidly maintained and enforced by the

courts; because contracts, express or implied, are at the bottom of all business relations. But a contract is only entitled to respect from the presumption that the contracting parties were standing on an equal footing at the time the contract was entered into. Will any man assert that the parties to this action were on an equal footing at the time this contract was entered into? Here was a man without means and without friends, torn and bruised by an accident, and jolted and shocked until he was prostrated; his wounds not yet examined to ascertain if they were fatal, racked with physical pain and scared out of his wits by the misfortune that had overwhelmed him; and while in this condition, a condition of mind and body absolutely preventive of intelligent calculation, the company with unseemly haste thrust this cold, calculating stipulation into his face and obtained his signature to it. The essence of a contract is an agreement of the minds of the parties; or the consent and harmony of their intentions. The circumstances under which the respondent's signature was obtained to the so-called release shows, indeed, no want of harmony; but it was unilateral harmony; there was but one mind operating; the mind of the respondent was plainly in no condition to agree to anything; and appellant should not be allowed to shelter itself behind an instrument obtained in such a way.

The judgment should be affirmed.