[No. 2309.   Decided August 25, 1897.]

# City of Tacoma, *Respondent*, v. The Tacoma Light and Water Company, *Appellant*.

SALE — CONTRACT BETWEEN PRIVATE PARTIES AND PUBLIC CORPORATION — MISREPRESENTATION — RELIANCE ON — WHAT CONSTITUTE MATERIAL FACTS — SUFFICIENCY OF EVIDENCE — MEASURE OF DAMAGES.

In the consideration of questions of fraud and misrepresentation arising upon a contract for the sale of property by a private corporation to a municipal corporation, it is a fact properly for the consideration of the jury that the less expert business capacity, skill and experience may be with the municipal corporation.

When false representations are made by a vendor concerning the subject of sale, and the purchaser has no knowledge of their falsity and has been reasonably prudent, but such statements are not so openly and palpably false that their untruth is apparent to an ordinarily prudent person, he has a right to rely thereon, and, if injured in consequence of such reliance, is entitled to recover damages.

In an action by a city to recover damages for deceit and fraudulent representations, whereby it was induced to purchase a water plant at a price greatly in excess of its value, a verdict in favor of the city is warranted when there is evidence tending to show that the defendant knowingly made false representations as to the amount of land, the miles of pipe laid and the quantity of flow of water included in the plant; also false statements as to the original expense of the plant to the vendor and the net income derived therefrom; that an attorney of the defendant was president of the city council, and as such worked for the purchase of the plant, always voting against any reduction of the price at which it was offered to the city, and receiving pay for his services as attorney proportioned to the amount of purchase price paid by the city; that an engineer of the defendant had stated as a positive fact that the daily flow of water from certain springs, upon which a high valuation was placed in the negotiations, was four times the amount actually flowing therefrom; and that the representations made by the defendant and its agents for the purpose of inducing the sale, had been believed and relied on by the city council and had induced that body to enter into the contract of purchase.

Whether a representation as to value is merely an expression of opinion, or an affirmation of a material fact to be relied upon, is a question for the jury.

Where the material facts of the case are supported by competent evidence, although it may be very conflicting and the preponderance may appear to be the other way, a court for the review of errors on appeal cannot disturb the verdict.

The measure of damages for false representations inducing the purchase of a water and light plant is the difference between the whole purchase price paid and the actual value of the whole property at the date of sale, when the sale was of the plant and all property pertaining thereto as an entirety, and there was no agreement between the parties upon the value of any specific portion.

Appeal from Superior Court, Pierce County.—Hon. W. H. Pritchard, Judge. Affirmed.

Opinion on re-hearing overruling the opinion rendered on the original hearing of the cause, rendered January 5, 1897, and reported in 16 Wash. 288.

*Parsons, Corell & Parsons*, and *Crowley, Sullivan & Grosscup (J. H. Mitchell*, of counsel), for appellant.
*James Wickersham*, and *Ben Sheeks*, for respondent.

The opinion of the court was delivered by

Reavis, J.—Action to recover damages for deceit and fraudulent misrepresentations by appellant in the sale of a water and light plant to respondent. The respondent, the city of Tacoma, is a municipal corporation of the first class, and the appellant a private corporation organized under the laws of the state, having its principal place of business in the city of Tacoma, and holding from the city a franchise to furnish water and light to the inhabitants of the city for reasonable compensation. For several years before the sale of its water and electric light plant to the city, appellant owned a system of waterworks which was used for the purpose of supplying the city and its inhabi-

tants with water, and was the owner of an electric light plant and a gas plant operated to supply the inhabitants as well as the city with electric light and gas. It owned waterworks, electric light plant, gas works, sources of water supply, riparian rights, rights of way, lands, lots and personal property. Its franchise to supply water and light to the inhabitants of the city and to the city was not exclusive, and it appears that there were other companies at the time possessing similar franchises, and to some limited extent operating in the city. Negotiations for the sale of the water and light plant and works and various properties of the appellant were entered into between the parties in the year 1892. The respondent was not authorized to purchase the property offered without submitting the proposition to purchase and to issue bonds for the payment of the purchase money to a vote of the people of the city. After much negotiation the price was agreed upon between the parties at $1,750,000 for certain properties scheduled by appellant, and the city counsel of respondent thereupon submitted the proposition to purchase the properties which were described, for the price agreed upon, to the electors of the city at an election on the 11th day of April, 1893, and afterwards respondent, pursuant to the authority conferred by the electors, on June 22, 1893, purchased the property from appellant for the sum of $1,750,000.

The complaint substantially charges that appellant, for the purpose of inducing respondent to purchase its property at the price stated, and with intent to deceive and defraud respondent, prior to the sale by appellant's officers, agents, servants and employees, falsely represented to respondent and its agents and officers that appellant's waterworks and sources of water supply included the flow from certain springs known as Thomas and Patterson springs, and represented to respondent that the permanent daily

flow from those springs was not less than ten million gallons, and that the daily flow from Clover creek was not less than fifteen million gallons, and that the daily flow from Maplewood and Puyallup springs was not less than thirteen million gallons, and that the daily flow from Gallagher's gulch springs was not less than four million gallons; and that appellant represented that all of the flow of water mentioned came from gravel beds and was pure, and that it was at such an elevation above the city as to permit being supplied directly to the three different services by gravity which would insure economy in working expenses; that the extension to Thomas and Patterson springs could be made for $400,000 and that thereupon the city would have an abundant supply of good pure water in its highest service; that all of its property was in good and first-class condition and that it was of the value of $1,750,000; that each and all of these representations were untrue and were known by appellant to be untrue when made, and that they were made to induce respondent to purchase the property; that appellant, from the time of the offer of its property for sale until the sale was consummated, continuously asserted, declared and published that the representations before mentioned were in all respects true, but it is charged by respondent that in truth, as appellant well knew, the permanent daily flow of water from Thomas and Patterson springs did not exceed 2,500,000 gallons, nor did that from all the various sources of supply exceed 20,000,000 gallons; that Thomas and Patterson springs and the lands upon which they are situated are of no value whatever to respondent; that it was the purpose of respondent in its purchase of appellant's property to acquire, own and operate a complete water system adequate to supply by gravity the city and its inhabitants with water; that of the various sources of supply

offered for sale by appellant, Thomas and Patterson springs were the only source from which water could be obtained and conveyed by such system to the more elevated portions of the city containing a large number of its inhabitants; that the waters from these springs had not theretofore been conducted to the city by appellant, but appellant represented that it had made surveys and estimates by competent engineers and that respondent could by a gravity system bring such waters to the elevated portions of the city at an expenditure of about $400,000; that respondent would not have purchased the property of appellant or any part thereof but for respondent's reliance on the waters from Thomas and Patterson springs, and that appellant knew that respondent relied upon its representations as to these springs.  It is also charged that appellant falsely and fraudulently represented that of the waterworks sold to respondent there was a new conduit, sound and in good condition, for conveying water from sources of supply to the distributing point of more than 54,000 feet, and that connected with the distributing system thereof there was laid iron pipe to the amount of 349,210 feet, and also represented to respondent that of the land to be conveyed as a part of the plant a certain tract known as " Site for Station A" consisted of 8.16 acres, when in truth, as defendant knew, the conduit was old, rotten and almost worthless and of the distributing system there was not more than 293,520 feet of iron pipe laid, and that the " Site for Station A" did not contain more than one acre of land; that appellant represented falsely that from its knowledge of the character and nature of the properties sold they were of the value of $1,750,000, when in truth and in fact, which was well known to appellant, all the properties so offered for sale by appellant were not, at any time, worth more than $750,000; that respondent had no

knowledge or means of knowing the falsity of the representations made by appellant, or either of them, until after sale was completed and the purchase price paid; that it was owing to such false and fraudulent representations by appellant that such purchase was made. It is further charged that with intent to, and for the purpose of, preventing respondent from making any investigation or examination of the property sold and of the character, value and condition thereof, the appellant fraudulently and corruptly induced and employed certain of respondent's officers and servants, specifying the president of the city council, and other members of the council, and that such officers and agents of the city on account of such inducement and employment failed, neglected and refused to examine into the character, value and condition of the property purchased from the appellant, but represented to respondent that it could rely upon the representations made by appellant, and thus prevented any investigation or examination of the sources of the water supply and of the value, character and extent of the property purchased from appellant; and that by reason of the deficiencies in the property it was not of any greater value than $750,000, and damages are laid at $1,000,000.

The answer of appellant denies all the allegations of fraud and misrepresentation charged in the complaint, and affirmatively sets up that it afforded every opportunity for an examination of its property before sale, and that respondent employed a competent and fully qualified civil and hydraulic engineer before the sale to make an examination of appellant's property, including the sources of water supply, and that the engineer, Rudolph Hering, made such examination and reported to the city council full information as to the kind, character and situation of the property, including the sources of water supply; and denies

that it sold to respondent property otherwise than as the same was described by its deed to respondent, and that the property therein described as "Site for Station A" contained .816 acres and no more.

Respondent replying admits that it employed the engineer Rudolph Hering, that he made some examination of the property of appellant and that he made a report to the city council, but alleges that he relied entirely upon the representations made to him by appellant concerning all the matters stated in his report, and denies that the report contained full information of the kind, character and situation of the property, including the sources of water supply, and denies that the respondent purchased the property relying upon the knowledge of its officers, agents, employees and engineers employed by it to make an examination of the properties, but relying on the representations of appellant.

After all the evidence was in, the superior court withdrew from the consideration of the jury all questions except misrepresentations to respondent relative to the quantity of water actually flowing from Thomas and Patterson springs, the quantity of iron pipe then laid, the quantity of land at "Site for Station A," and the value of the property sold; and the court stated that all other misrepresentations charged in the complaint were withdrawn, and that appellant could not recover unless on the ground of misrepresentations in the particulars mentioned. The superior court among other instructions gave the following:

" The elements of the wrong for which the plaintiff seeks to recover are as follows:

" 1st. That the defendant has made a representation in regard to a material fact;

" 2d. That such representation is false;

" 3d. That such representation was not actually believed

by the defendant's [appellant's] officers on reasonable grounds to be true.

"4th. That it was made with the intent that it should be acted upon;

5th. That it was acted upon by the plaintiff to its damage; and

"6th. That in so acting on it the plaintiff was ignorant of its falsity and reasonably believed it to be true."

These essential elements of the cause of action were then very elaborately explained and limited and their application shown by the court. The jury found for respondent and assessed damages in the sum of $787,500. A motion for a new trial was made by appellant and overruled, and judgment entered on the verdict, from which judgment and order overruling the motion for a new trial appeal was taken. The case was determined by this court on the 5th of January, 1897, and is reported in 16 Wash. 288 (47 Pac. 738), and the judgment of the superior court reversed. A petition and argument for re-hearing was thereupon filed by respondent, and, upon answer by appellant, a re-hearing directed by the court and the case again argued.

1. Counsel for respondent have discussed to some extent the testimony tendered by them in the superior court which was excluded, and have mentioned some exceptions which were taken by them to the rulings of the superior court during the progress of the trial, but it has been frequently observed here that such objections cannot be considered unless appeal is taken therefrom. The learned counsel for the appellant have, with much earnestness, insisted that the contract, the subject of this controversy, must in its execution be viewed as a contract between private corporations and individuals, and that the same rules of estoppel prevail against a municipal corporation when demanding damages for fraudulent misrepresentations in

the sale of property to it as exist between private parties. Their contention is that when the government or public corporation enters the field of commerce its contracts are subject to the same principles as private agreements. Counsel for respondent argue that all persons dealing with municipal governments must recognize that such municipality's agents are bound to fairness, good faith and fidelity to the public trust; and quite an array of authority is cited in the discussion of this principle. The authorities are too numerous for review here and we must be content to state a few. In *Argenti v. City of San Francisco*, 16 Cal. 256, the court observes:

" Contracts of corporations, whether public or private, stand on the same footing with the contracts of natural persons, and depend on the same circumstances for their validity and effect."

But the supreme court of the United States in the case of *United States v. Barlow*, 132 U. S. 271 (10 Sup. Ct. 77), in discussing the recovery back of money paid out by a department of the government, quotes with approval Baron PARKE in *Kelly v. Solari*, 9 Mees. & W. 54, 58:

" Where money is paid to another under the influence of a mistake, that is, upon the supposition that a specific fact is true which would entitle the other to the money, but which fact is untrue, and the money would not have been paid if it had been known to the payer that the fact was untrue, an action will lie to recover it back, and it is against conscience to retain it,"
and says:

" Reasons for the application of the rule are much more potent in the case of contracts of the government than of contracts of individuals; for the government must necessarily rely upon the acts of agents, whose ignorance, carelessness or unfaithfulness would otherwise often bind it, to the serious injury of its operations."

The same eminent authority also declares in the case of *Hume v. United States*, 132 U. S. 406 (10 Sup. Ct. 134):

" In order to guard the public against losses and injuries arising from the fraud or mistake or rashness or indiscretion of their agents, the rule requires of all persons dealing with public officers the duty of inquiry as to their power and authority to bind the government; and persons so dealing must necessarily be held to a recognition of the fact that government agents are bound to fairness and good faith as between themselves and their principal."

But it is not essential, in the disposal of the case at bar, to state whether it is a wholesome rule, sanctioned by authority, to hold each person dealing with the agents of a public corporation responsible for his knowledge of the fairness, good faith and fidelity with which the agent of the public discharged his trust. We think this principle here may be referable to the consideration of the testimony in the case. When fraud is alleged as an inducement to the execution of the contract, among the circumstances always pertinent to the inquiry is the status of the respective parties; whether in intelligence, skill and capacity they are upon an equal footing; whether the more wary has overreached the unwary. Municipal coporations are not primarily instituted for general business purposes. They are local governments, chiefly instituted for police protection, the conservation of order and the protection of public morals and health. Their entry into the field of trade is very limited and incidental to their other purposes. They are not constituted for money-making, and thus their legislative powers, ordinarily exercised by the city council, are not necessarily exercised by trained and experienced business men. The city council is not constituted for the same purpose as the board of directors of a private business corporation, which is created solely for the purpose of making money, and has special training for the one object;

hence, in the consideration of questions of fraud and misrepresentation arising upon a contract for the sale of property by a private corporation to a municipal corporation, it is a fact properly for the consideration of the jury that the less expert business capacity, skill and experience may be with the municipal corporation.

2. The necessity for a purchaser in an action against the vendor for fraudulent representations to prove whether he examined the property, and, if he did not, to state why such examination was not made, is urged by counsel for appellant to be one of the most important questions in the case, and it is said that one having eyes must open them and see, and having ears, must hear. This is true, and numerous decisions of the courts require that a purchaser of property, where the means of examination are at hand, should observe; but it will be noticed that ordinarily the facts in each case control its decision, and usually the duty of observation is stated with reference to simpler transactions, and property more conveniently seen, than in the case at bar. But suppose no examination were made. Pollock on Torts (Webb's Am. ed.), p. 377, says:

" Yet another case is that the plaintiff has at hand the means of testing the defendant's statement, indicated by the defendant himself, or otherwise within the plaintiff's power, and either does not use them or uses them in a partial and imperfect manner. Here it seems plausible at first sight to contend that a man who does not use obvious means of verifying the representations made to him does not deserve to be compensated for any loss he may incur by relying on them without inquiry. But the ground of this kind of redress is not the merit of the plaintiff, but the demerit of the defendant; and it is now settled law that one who chooses to make positive assertions without warrant shall not excuse himself by saying that the other party need not have relied upon them. He must show that his representation was not in fact relied upon."

And again at page 379:

" In short, nothing will excuse a culpable misrepresentation short of proof that it was not relied on, either because the other party knew the truth, or because he relied wholly on his own investigation, or because the alleged fact did not influence his action at all. And the burden of this proof is on the person who has been proved guilty of material misrepresentation. He may prove any of these things if he can. It is not an absolute proposition of law that one who, having a certain allegation before him, acts as belief in that allegation would naturally induce a man to act, is deemed to have acted on the faith of that allegation. It is an inference of fact, and may be excluded by contrary proof. But the inference is often irresistible."

Bishop on Non-Contract Law, § 337, says:

"*Blindly misled.*—That the defrauded party is too credulous and blindly misled, may perhaps, in some extreme cases, be a defense to this action, but it is not always or generally so. The true principle is believed to be, that the test of the representation is its actual effect on the particular mind, whether it is a strong and circumspect one or one weak and too relying."

Bigelow on Fraud, p. 524, observes:

" If the representation were of a character to induce action, and did induce it, that is enough. It matters not, it has well been declared, that a person misled may be said, in some loose sense, to have been negligent (in reality negligence is beside the case where the misrepresentation was calculated to mislead, and did mislead); for it is not just that a man who has deceived another should be permitted to say to him, ' You ought not to have believed or trusted me,' or ' You were yourself guilty of negligence.' This indeed appears to be true even of cases in which the injured party had in fact made a partial examination."

The case of *Rathbone v. Frost*, 9 Wash. 162 (37 Pac. 298), was an action by plaintiff upon a written contract

by defendant guaranteeing payment of all bills of merchandise which plaintiff might thereafter sell to a third person named. Defendant set up that he made a certain written guarantee and delivered it to plaintiff, which was other and different from the contract in suit, and that afterwards plaintiff forwarded the contract in suit to him, enclosed with a letter, and in the letter said: " There is but little difference in the blanks, but we prefer to have our own regular forms." The defendant executed the contract in suit without much examination of the same. There was substantial difference in the contracts. The court held that the plaintiff's letter was evidence of misrepresentation which should have gone to the jury, notwithstanding the defendant signed the contract with slight examination, and observed in reversing the cause:

" It is true it may have been a little careless on the part of Frost not to have examined the second instrument with reference to the conditions of the first; but it is upon careless people ordinarily that frauds are perpetrated. If it was not the intention of the respondent to obtain by the change a benefit which was not contained in the first agreement, then it has secured a contract which was not intended either by it or Frost, and if it was its intention to obtain this additional benefit, it evidently obtained it by sharp practice, and when sharp practice is analyzed fraud will usually be found to be its principal constituent element. We do not think the law should uphold men in their attempts to overreach others who are unsuspecting, and who rely upon the honor and integrity of those with whom they are dealing."

If some examination is made by the purchaser, but not thorough and complete examination, shall the vendor be allowed to receive and retain the benefit derived from a fraudulent misrepresentation relied upon by the injured party? We apprehend the rule relating to estoppel of the complainant in civil actions for fraudulent misrepresenta-

tions is the same as in criminal actions. This court said in *State v. Knowlton*, 11 Wash. 512 (39 Pac. 966):

"Appellant contends that Wooding did not rely upon the representations of defendant as to the character and quality of the metal, but that he submitted them to be assayed and relied principally on the report; and he argues that where a party undertakes to investigate for himself he is bound by the result of such investigation. We think it is quite well settled that the false representations need not be the only moving cause which induces another to part with his property."

The supreme court of Massachusetts, in *Holst v. Stewart*, 161 Mass. 516 (42 Am. St. Rep. 442, 37 N. E. 755), observes:

" But in the application of this rule, the circumstances of each case should be considered to determine whether the plaintiff has been guilty of such inexcusable negligence as should preclude him, under a general rule of public policy, from having a remedy against one who has fraudulently abused his confidence."

In *Fargo Gas & Coke Co. v. Fargo Gas & Electric Co.*, 4 N. D. 219 (59 N. W. 1066), the property purchased consisted of a gas plant and mains and all other classes of property which go to make up such a plant, and also an arc electric light plant with poles, wires and other fixtures, distributed over parts of the city of Fargo. The fraudulent representations were of two classes; one class related to the physical condition of the plant, embracing statements as to the number of miles of wire, the number of poles, the gas mains and as to the condition of the plant in other respects; the other class related to the net earnings of the plant for the previous year, and the price charged customers for gas and electric light. The lower court refused to give the following instruction offered by plaintiff:

" If you find that, during the negotiations, statements were made by the plaintiff as to the earnings of the plant, the defendant had a right to rely upon these statements; and if they were so relied on, and were false, and the defendant suffered injury thereby, the defendant would be entitled to recover the damages which it suffered in consequence thereof."

The supreme court, in reversing the judgment below, said:

" It should have been left to the jury to determine whether the means were at hand to discover the falsity of the statements made, in view of the character of such statements and the nature of the property sold. The defendant, as a matter of law, had a right to rely implicitly upon the statements made by plaintiff touching the character of this plant. So long as defendant did not actually know the representations to be false, it was under no obligation to investigate to determine their truth or falsity."

The supreme court of the United States in *Stewart v. Wyoming Cattle Co.*, 128 U. S. 383 (9 Sup. Ct. 101), declares the rule:

" The gist of the action is fraudulently producing a false impression upon the mind of the other party; and if this result is accomplished, it is unimportant whether the means of accomplishing it are words or acts of the defendant, or his concealment or suppression of material facts not equally within the knowledge or reach of the plaintiff."

This case was where an examination had been made, by an experienced agent of the cattle company, of large herds of cattle on the ranche and misrepresentations had been made to him and to the company which were relied upon, and the court held that, notwithstanding such examination had been made, yet, from the nature of the property, defendant was responsible in damages for misrepresention of material facts which were relied upon by the plaintiff.

*Schumaker v. Mather*, 133 N. Y. 590 (30 N. E. 755);
*Burns v. Dockray*, 156 Mass. 135 (30 N. E. 551).

Where the purchaser may know the truth by looking,
or where the truth is shown him, he is not misled, but
where he relies upon the statements of the vendor, and
has no knowledge that such statements are false, he can,
when they are false, and he has been reasonably prudent,
recover damages. If no knowledge of their falsity is pre-
sented to him, the purchaser may rely implicitly upon
the statements of the vendor, if such statements are not
so openly and palpably false that their untruth is apparent
to an ordinarily prudent person.

3. After judgment was entered in the superior court
appellant moved to set aside the verdict and for a new
trial. It is not deemed necessary to consider any of the
various grounds upon which the motion was based other
than the first, viz.: that the evidence was insufficient to
justify the verdict. The trial was a fair one. The court
below gave very plain and correct instructions to the jury,
and such as can not be justly criticized to any extent. The
trial of the cause occupied some two weeks in the superior
court. The evidence taken, which is all brought here,
covers over seventeen hundred pages of the statement of
facts; and many witnesses testified. All the negotiations
between appellant and respondent were very exhaustively
inquired into. The material issues which were submitted
to the jury by the court were each supported by testimony
produced by respondent. The respondent had, in the fall
of 1892, employed a competent and skilled hydraulic en-
gineer of established reputation, Rudolph Hering, to ex-
amine generally and report upon a plan for an adequate
water supply for the city of Tacoma, to be owned and
operated by the city. October 22, 1892, his report was
made to the mayor and chairman of the water committee,

the water committee being a special committee appointed by the city council to inquire into and report upon the subject to the council. The examination made by this engineer, as shown from his report and stated in his testimony, was of a general character. Among other sources of supply he examined that owned by, and then operated by, appellant. In his report he says, referring to the sources and daily capacity of Thomas and Patterson springs, that they " are given as follows, partly according to a careful gauging and partly an estimate made by Mr. George H. Sellers, chief engineer of the Light and Water Company, and substantially verified by me during the low flow of the present year," and further, " Patterson, estimated at 5,000,000 gallons. Springs adjacent thereto (Thomas, etc.),  .  .  .   estimated at 5,000,000 gallons." The watershed which supplied these springs he did not examine, but Mr. Sellers had reported it as very large. Hering had made no personal examination of the drainage area. He says he was not employed to give exact measurements. The time which he spent in examination of these sources of supply was brief. In summarizing the properties of appellant, Hering describes the " Site at Station A" as 8.16 of an acre. He says his estimate in his report of pipe laid was from information derived from appellant's officers. The report was filed in October. After this there is evidence on the part of the respondent tending to show that the president, chief engineer and superintendent of appellant each made representations relative to these particular properties to various members of the city council. They published statements in the city newspapers, and the president of appellant, at the request of the committee of the council, filed a verified schedule of the properties of appellant. In this schedule the " Site at Station A" is represented to contain 8.16 acres. This

representation with reference to Station A was acted upon
by the committee of the city council having the matter
of the negotiations in charge, and it was valued by such
committee at about $40,000. Several members of the city
council at the trial testified that they relied upon this
representation. The mayor testified that he relied upon
it. It is true when the deed was executed, on the 22d of
June, 1893, and delivered to the city, the area of " Site
for Station A" was described as .816 acres. It is main-
tained by counsel for appellant here that before the deed
was delivered this was a matter of discussion in the council,
and it was understood there had been a mistake; but such
understanding is one of the controverted facts. Several
members of the city council testified that the chief engineer
of the Light and Water Company stated to them that
Thomas and Patterson springs would furnish an average
daily flow of 10,000,000 gallons. Some of the council-
men testified that the engineer said he had measured accu-
rately this flow, and thus stated it positively as a fact.
Members of the council also testified that they relied upon
this statement of the engineer and it moved them to vote
for a purchase of appellant's property. A number of the
councilmen testified that they relied upon the statements
of the president of the Light and Water Company and
the superintendent, as well as those of the engineer. At
the trial competent testimony was introduced upon the
part of respondent tending to prove that the daily flow
from Thomas and Patterson springs was less than 2,500,000
gallons. These springs were appraised at a high valua-
tion by the committee of the council that fixed the valua-
tion upon the property of appellant in the first instance.
It is a reasonable presumption, at any rate, that they were
a material inducement to respondent in making the pur-
chase. They were about sixteen miles from the city and

neither the council nor the mayor made any personal examinations. There is testimony on the part of respondent tending to show that there was about ten miles of pipe less than was represented to be already laid. A statement of the original cost and investment in its property of the Light and Water Company and also of its earnings was made by appellant to the city council for the purpose of showing the value of appellant's properties. This statement is claimed by respondent to have been false in some material particulars, and testimony was introduced tending to establish respondent's contention. Respondent also produced testimony tending to prove that the president of the council was a member of the law firm which was employed by appellant pending the negotiations of the purchase of the property by respondent, and that the president and chief engineer of appellant had in mind at the time, and discussed the propriety of, such employment; that important legal services were rendered by this firm to appellant before the sale was consummated; that such engagement as counsel continued thereafter, and that the fee paid the firm of which the president of the council received his share was a lump sum for various services extending back to a time prior to the negotiations and settlement of the price for appellant's property purchased by respondent; and the president of the council testified that his firm, in making its charge for services estimated that one per cent. on the amount of the property transferred to the city was a fair measure for the amount of the fee. Respondent also produced evidence tending to prove that the president of the council was especially active in advocacy of the purchase of appellant's properties, and that he at all times in the council voted against any reduction of the price. The value of the properties purchased by the city and the price which should be paid therefor were the vital questions

in all the later negotiations between the parties. In determination of the price to be paid, the city council and the mayor were the sole responsible parties. The electors of the city could only ratify such conclusion when made by the council and approved by the mayor. We can not acquiesce in the very earnest contention presented by counsel for appellant that there were no substantial facts from which inferences might be drawn by the jury sustaining the allegation of corrupt influence of a member of the council. It is not an original question of fact here, but one which the jury determined. The trial court and jury had before them all the witnesses in the case. They could see the countenance and hear the voice of the witness; they could observe his manner in testifying; which all afford aid in weighing evidence. The appellate court has not these opportunities. The jury might believe a portion of the testimony of a witness and reject another part of his testimony.

Counsel for appellant have argued with much force that the testimony of appellant satisfactorily explained many apparent facts urged by respondent, but such explanations, and the weighing of testimony introduced by appellant, were for the jury. Much has been discussed before us of the difference between the statement purporting to be a fact, and the expression of an opinion. It may be said, however, relative to the daily flow of water from certain sources that the statement of a competent expert hydraulic engineer may oftentimes be accepted as a statement of fact, dependent on the language used and the impression it really made upon the party to whom made, which would be questions of fact for the jury. One method of arriving at value of properties of this nature is based upon their net earning capacity, which is considered equal to a capital the interest of which equals the net income from the works.

There are many elements that enter into this calculation to make it a fair one. The stability of the income, the deterioration of the works, the cost of repairs and renewing perishable materials, such as iron and wood, enter into the question. The appellant seems in its estimates of the value of its properties to have taken this method in arriving at the price. Of course, it made numerous representations of the value of its properties to the respondent; and generally mere representations of value are deemed expressions of opinion; but the statement of income received and of expenditures made must be true, for they are facts. The statement of the net income, when made, must be true.

" Whether a representation as to the value is merely an expression of opinion or belief, or an affirmation of a fact to be relied upon, is a question for the jury." *Simar v. Canaday*, 53 N. Y. 298 (13 Am. Rep. 523); *Hickey v. Morrell*, 102 N. Y. 454 (7 N. E. 321, 55 Am. Rep. 824); *Cheney v. Gleason*, 125 Mass. 166; *Picard v. Mc-Cormick*, 11 Mich. 68; *Nowlin v. Snow*, 40 Mich. 699; *Allen v. Hart*, 72 Ill. 104; *Cruess v. Fessler*, 39 Cal. 336; *Stewart v. Wyoming Cattle Ranche Co.*, 128 U. S. 383 (9 Sup. Ct. 101).

Statements of value are sometimes nothing more than the expression of the party's own opinion, and there is a group of decisions in which they are so treated. On the other hand, statements of value may be affirmation of a specific material fact, and there is a group of decisions in which they are so treated and held to be fraudulent misrepresentations. There is no necessary conflict between these two groups of decisions. *Kost v. Bender*, 25 Mich. 515.

4. The trial court, which hears all the evidence and has the same facilities for weighing it as the jury, may exercise a larger discretion in setting aside the verdict than a

court for review of errors. Counsel for appellant cites several cases from this court.

In *Pederson v. Seattle, etc., Street Ry. Co.*, 6 Wash. 202 (33 Pac. 351), it was said:

"But, if, on due consideration of the evidence, it appears that the verdict is not supported by any substantial proofs, it ought to be promptly and unhesitatingly set aside, and a new trial ordered."

*Guley v. Northwestern Coal, etc., Co.*, 7 Wash. 491 (35 Pac. 372), is cited by appellant to sustain the motion for a new trial on the insufficiency of the evidence. The court said in view of the facts before it:

"Credible witnesses cannot be set aside in this way, and a verdict supported on the uncorroborated testimony of a single witness, and he the party most interested. Where the clear weight of the evidence is with either side, there is no substantial conflict, and the court should take the decision of the case from the jury."

In that case, which was a suit for damages for negligence, the acts of negligence were testified to by the plaintiff alone. It was against a coal company for injuries sustained on a car loaded with coal going down a steep grade. There was testimony of other witnesses that the superintendent of the coal company said, referring to plaintiff:

"Don't blame the boy; I was to blame for it. I told him to brake the car down, and gave him the stick to brake it down with."

There were several witnesses on the part of the defendant who testified as to plaintiff's negligence contributing to the accident. Two of the judges of the court dissented from the conclusion of the majority and a strong dissenting opinion was filed. This case was commented upon in *Brown v. Seattle City Ry. Co.*, 16 Wash. 465 (47 Pac. 890), as follows:

" We do not think the views here expressed necessarily conflict with the decision of this court in *Guley v. Northwestern Coal, etc., Co.*, 7 Wash. 491 (35 Pac. 372), as the court there used the expression that the ' clear ' weight of all the evidence must be on one side to justify the court in taking the decision from the jury. But the court does not favor any extension of the rule announced in the case cited."

We think the court, in *Guley v. Northwestern Coal, etc., Co.*, went beyond the true rule in applying it to the facts of that case. In the case of *Comegys v. American Lumber Co.*, 8 Wash. 661 (36 Pac. 1087), two of the judges dissented from the conclusion of the majority in reversing the judgment of the lower court for insufficiency of the evidence to sustain the verdict. In *Roberts v. Washington National Bank*, 11 Wash. 550 (40 Pac. 225), it was merely decided that in an equity cause findings of fact made by the court do not stand upon the same footing as the verdict of a jury, but it is the duty of the appellate court to examine *de novo* the proofs contained in the record. But upon the facts in that case two of the judges dissented from the conclusion of the court. The rule obtaining in this court has been very well expressed in *Graves v. Griffith, etc., Co.*, 3 Wash. 742 (29 Pac. 344):

"An appellate court in a law case will not usurp the functions of a jury, or of a judge acting in the capacity of a jury, and reverse the judgment because the weight of testimony seems to be on the other side, or because, in a case of conflict of testimony, the jury believed the testimony of witnesses that it [the court] does not believe." *Puget Sound, etc., R. R. Co. v. Ingersoll*, 4 Wash. 675 (30 Pac. 1097).

In *Booth v. Columbia, etc., R. R. Co.*, 6 Wash. 531 (33 Pac. 1075), the court said:

" We think there was *some* evidence which was properly presented to the jury,  .  .  .  and that there was sufficient evidence, if not denied, to support a judgment. Whether or not it was successfully denied, is a question for the jury to pass upon." *Dillon v. Folsom*, 5 Wash. 439 (32 Pac. 216); *Burden v. Cropp*, 7 Wash. 198 (34 Pac. 834).

" The verdict of a jury will not be disturbed on appeal, if there is any testimony which warrants their conclusion, however much the testimony to the contrary may preponderate." *Bucklin v. Miller*, 12 Wash. 152 (40 Pac. 732).

" The verdict of a jury will not be disturbed when there is evidence supporting it, although it might not be sufficient to convince the appellate court." *Robertson v. Woolley*, 12 Wash. 326 (41 Pac. 48).

" When the trial is before a jury, the court cannot weigh the testimony upon a motion for a non-suit for the reason that it cannot weigh it at any time." *Lambuth v. Stetson & Post Mill Co.*, 14 Wash. 187 (44 Pac. 148).

" When there is any evidence to warrant the verdict and the trial court has refused to set it aside, it will not be reversed on appeal. *Miller v. Bean*, 13 Wash. 516 (43 Pac. 636).

In the case of *Brown v. Seattle City Ry. Co.*, *supra*, this court said, speaking of the testimony of the plaintiff upon which the allegations of the complaint were principally sustained:

" It is true, her interests were involved in the result of the suit, and that was a matter for the jury to take into consideration.   There was evidence to support the verdict, if the witness was credited by the jury.   We do not think it is the function of the court to weigh the credibility of the witnesses; and, where there is substantial conflict in the testimony, the case is for the determination of the jury."

Counsel for appellant have maintained with much earnestness here that the judge of the superior court was not

satisfied with the verdict and that it should have been set aside, and the opinion of that court overruling the motion for a new trial has been incorporated in the record and brought here. In it we find the following statement:

"I will merely say this, that I became satisfied at the conclusion of the trial and am still satisfied that there was evidence tending to show or to prove the affirmative of every issue of fact that was submitted in the charge to the jury, and there was such substantial evidence in the way of circumstances tending to prove every one of these that it was the duty of the court to submit them to the jury."

It is true that court proceeds to discuss a personal acquaintance with the president of the city council and with some of the officers of appellant and to say that more than a legal presumption in favor of the innocence of those gentlemen had weight with it, and that it was altogether likely, if the judge had been called as a juror in the case, he might have been rejected. These remarks in the opinion of the superior judge seem to have been brought out by his view of a possible duty of the court with reference to the president of the city council as a member of the bar, and not as an expression of judicial opinion upon the validity of the verdict of the jury in the case which had been tried.

The sale of the water and light works and all property appertaining thereto was an entirety. There was no agreement between the parties upon the value of any specific portion or article. Therefore the correct rule for assessment of damages was stated by the court: The difference between the whole purchase price paid and the actual value of the whole property at the date of sale. There was competent testimony from which the jury could arrive at the amount found.

Where the material facts of the case are supported by competent evidence, although it may be very conflicting

and the preponderance may appear to be the other way, a court for the review of errors on appeal can not disturb the verdict.

The judgment of the superior court is affirmed.

SCOTT, C. J., and DUNBAR, J., concur.

ANDERS, J., *(dissenting)*.—After further consideration of the questions presented in this case, I am still convinced that the former conclusion of the court was right, and I am, therefore, constrained to dissent.